720 So.2d 757 (1998)
Judith Dickson BURNETTE
v.
Jacques T. BURNETTE.
No. 98-CA-0498.
Court of Appeal of Louisiana, Fourth Circuit.
October 21, 1998.
*758 Wiley J. Beevers, Ronald S. Hagan, Beevers & Hagan, L.L.P., Gretna, for defendant/appellant Jacques T. Burnette.
Jeffrey S. Winder, Metairie, for plaintiff/appellee Judith Dickson Burnette.
Before SCHOTT, C.J., and BYRNES and MURRAY, JJ.
MURRAY, Judge.
Jacques T. Burnette appeals a judgment ordering him to pay his ex-wife $38,213.21, representing child support owed through April 1997, legal interest on all arrearages, and $2,500.00 in attorney fees. We amend the judgment in part and affirm as amended for the reasons that follow.

FACTS AND PROCEEDINGS BELOW
Judith Dickson[1] and Jacques T. Burnette were divorced in January 1983. Ms. Dickson was granted custody of their two minor children, and Mr. Burnette was ordered to pay $430.00 per month in child support. Subsequent proceedings resulted in a June 20, 1990 consent judgment that reduced Mr. Burnette's monthly support obligation to $300.00, but made executory $7,310.00 in past-due payments, with legal interest until paid. It was further specified that Mr. Burnette was to pay an additional $150.00 per month until the arrearages were paid in full.[2]
*759 On March 17, 1997, Ms. Dickson moved to hold Mr. Burnette in contempt, alleging that he had paid only $1,300.00 in child support since June 1990. After obtaining service on Mr. Burnette's counsel of record in the 1990 proceedings, a default judgment was entered on April 16, 1997. This judgment specified that Mr. Burnette was found in contempt for his failure to pay $42,205.19 in past-due support, and ordered him to be incarcerated in Orleans Parish Prison. Two attachments were subsequently issued for Jefferson and St. John Parishes.
On May 5,1997, Mr. Burnette moved for a new trial and for rescission of the attachments, contending that service of the rule on his former counsel was improper and invalid. He additionally claimed that the amount of past-due support was inaccurate, both because of errors in calculation and because "the minor child [sic] resided with defendant for extended periods of time since September 1994." The court granted his motion for rescission and recalled the attachments, and a contradictory hearing was set on his motion for new trial.
Mr. Burnette's motion for new trial was granted without opposition on May 28, 1997, and the court heard testimony from Judith Dickson, Jacques Burnette, and Sheila Burnette, the defendant's wife since 1984. This testimony established that the couple's daughter, Jamie, had always lived with her mother. Jamie entered her senior year in high school in Fall 1993, and attained majority in August 1995. Jacques, Jr., who would not be eighteen until July 1997, had lived with his father from September 1992 to February 1993 and from September 1993 to April 1996. In addition, Mr. Burnette paid for their son to attend private school during this period.
Mr. Burnette claimed that a written agreement confected in 1986, when his ex-wife had to be hospitalized, allowed him to reduce his payments because the letter included the statement that "Child support payments will be suspended during the time that [the children] are in my physical control." Both he and his second wife also testified that when Jacques, Jr. first moved, Ms. Dickson had agreed during a phone conversation that the support payments would be reduced to $150 per month. They stated that in September 1993, when Jacques, Jr. again joined their household, it was agreed that since each parent had one child with them, no support would be due. According to Mr. and Mrs. Burnette, the boy's grades "went from straight F's to straight A's" because of the change in custody.
During the trial, Mr. Burnette gave his exwife a check for $6,000.00, and presented evidence of the following payments since June 1990:

June 1,1992 $260.00
June 15,1992 $250.00
July 1,1992 250.00
Sept. 5,1992 250.00
Sept. 23, 1992 150.00
Oct. 18, 1992 150.00
Oct. 31,1992 150.00
Nov. 18,1992 200.00
Dec. 12,1992 150.00
Jan. 18,1993 100.00
Oct. 1,1993 75.00
Apr. 27, 1994 20.00
June 1, 1994 200.00

According to Mr. Burnette, the later payments were made solely because he had agreed in early 1994 to pay off $20,000.00 in arrearages at $200.00 per month.
Ms. Dickson testified that she "sent [Jacques, Jr.] to his dad's because I was concerned that he was getting involved with a bad group of kids." While she said that her son "went back and forth" between her home and his father's, she agreed that Mr. Burnette was probably correct as to the dates Jacques, Jr. had lived with him. She admitted that a reduction in support had been discussed, "but he was not in agreement *760 with the terms that I was willing to work with," so she had rejected his proposal. Ms. Dickson denied that there was any discussion of Mr. Burnette paying tuition in lieu of support, indicating that she had not been consulted about what school Jacques, Jr. would attend while residing with his father.
At the close of the hearing, the trial court ruled that because there had been an intervening child support judgment, the 1986 agreement could have no bearing on Ms. Dickson's present claim for arrearages. The court then pronounced Mr. Burnette to be in contempt of court for his failure to pay the 1990 judgment, and further stated:
In addition to that, I find as a result of the 1990 judgment, he was cast in judgment for the amount of $300.00 a month which accumulates to some $24,000.00. He is in arrears approximately $31,310.00.... [After credit for payments since 1990,] he's in arrears $29,110.00 plus judicial interest from the date of judicial demand.
....
Mr. Burnette, I'm not going to send you back to jail today. I've got to tell you that you have a pattern of not paying your obligations for your children.... [S]ince 1989 you have consistently fallen behind in your child support obligations which causes me to question whether there was ever any follow-up oral agreement with your ex-wife to reduce your child support obligation.
The court thus decreed that the defendant was liable for $300.00 per month for the entire period since June 1990, with credit only for amounts actually paid.
The written judgment at issue was signed June 11, 1997, casting Mr. Burnette to pay his ex-wife the following amounts:
$22,490.00 representing $300.00/month child support from June 1990 through April 1997, less payments totalling $2,210.00;
$ 7,499.80 representing judicial interest on the above past-due amounts;
$ 7,310.00 representing the unpaid balance on the 1990 judgment;
$ 4,313.41 representing legal interest since June 1990 on the unpaid judgment;
$ 2,500.00 in attorney fees;
LESS the $6,000.00 delivered to Ms. Dickson at trial.
The judgment was made executory, and Mr. Burnette was ordered to pay $38,213.21[3] within 120 days.

DISCUSSION
Mr. Burnette first contends that the trial court clearly erred in rejecting the "uncontroverted evidence" of a mutual agreement to reduce, then suspend entirely, his monthly support obligation while his son lived with him. He argues that, as in Roberts v. Roberts, 474 So.2d 471 (La.App. 4th Cir.), writ denied, 477 So.2d 709 (La.1985), his testimony was not only corroborated by that of his second wife, but by his payment of reduced support for September 1992 to February 1993, and of private-school tuition beginning in September 1993. He further claims that even if no specific agreement was reached, his ex-wife's voluntary transfer of physical custody and his assumption of sole financial responsibility for their son is sufficient to suspend his support obligation under Sims v. Sims, 422, So.2d 618 (La.App. 3d Cir.1982), writs denied, 427 So.2d 870 (La.1983). Mr. Burnette thus asserts that the judgment must be reduced by approximately $11,100.00 for the thirty-one months that his son was in his household.
Ms. Dickson counters that, as noted in Bagby v. Dillon, 434 So.2d 654, 660 (La.App. 3d Cir.), writ denied, 440 So.2d 150 (La. 1983), judicial action is generally required to reduce or suspend an in globo support award such as hers. She argues that because Mr. Burnette's erratic and meager payment history contradicts, rather than corroborates, his self-serving testimony, the trial court correctly rejected his claim that she had agreed to any modification of his obligation. Ms. Dickson thus contends that the judgment for arrearages must be affirmed.
A child support judgment generally remains in full force until the party ordered to pay it has the judgment modified, reduced or terminated by a court. Halcomb v. Halcomb, *761 352 So.2d 1013, 1015-17 (La.1977). However, the parties may modify or terminate child support payments by conventional agreement if it does not interrupt the children's maintenance or upbringing and is in their best interests. Dubroc v. Dubroc, 388 So.2d 377, 380 (La.1980); Johnson v. Johnson, 430 So.2d 223 (La.App. 4th Cir.1983). The party asserting an extrajudicial modification has the burden of proving a clear and specific agreement; mere acquiescence in accepting reduced payments does not waive the right to enforce the judgment. Dubroc, 388 So.2d at 380; Johnson, 430 So.2d at 224 (citations omitted). The trial court's resolution of this issue is a factual determination which cannot be disturbed on appeal absent manifest error. Roberts, 474 So.2d at 472.
In the instant case, we find no manifest error in the rejection of Mr. Burnette's claims regarding his failure to pay full child support for the periods at issue. It is noted that he first professed reliance on the written agreement executed in 1986, even while admitting that this had been drawn up only because Ms. Dickson anticipated a period of temporary disability. He nevertheless asserted that the effect of that agreement was intended to be "open-ended" because there was no time limit specified in the document. However, Mr. Burnette concedes that no such provision was included in the subsequent 1990 judgment. Based upon this evidence and testimony, we find no error in the determination that the 1986 agreement was inapplicable to the present controversy.
Additionally, the record offers little support for Mr. Burnette's arguments regarding the alleged oral agreements in 1992 and 1993. He claims that the existence of the 1992 agreement, reducing his obligation to $150.00 per month, is corroborated by his payment of that amount during the months when Jacques, Jr. was living in his home. In fact, however, his cancelled checks fail to demonstrate any consistent pattern of payment, whether before, during, or after that alleged agreement. Instead, it is seen only that he paid $510.00 in June 1992, $250.00 in July, nothing in August, $400.00 in September, $300 in October, $200 in November, $150 in December, and $100.00 in January 1993. When measured against this payment history, little weight may be given to the testimony, by Mr. Burnette and his second wife, that he was abiding by an agreement to pay $150.00 monthly in child support.
Similarly, the fact that Mr. Burnette made no payments whatsoever from February 1993 through August 1993, while Jacques, Jr. was again in Ms. Dickson's custody, casts considerable doubt on his claim that he suspended payments altogether in September 1993 only because she agreed to the arrangement. Although Mr. Burnette further argues that his ex-wife's assent to the agreement is demonstrated by her failure to take legal action earlier, it is equally true that Mr. Burnette failed to seek judicial recognition of the alleged agreements, or even to memorialize them in writing as he had in 1986. Thus, the trial court's determination that Mr. Burnette failed to prove any extrajudicial modification agreement is amply supported by the evidence.
Mr. Burnette's final argument in support of his actions is that decisions from the First and Third Circuits, such as Palmer v. Palmer, 95-0608 (La.App. 1st Cir. 11/9/95), 665 So.2d 48; Bagby v. Dillon, supra; and Sims v. Sims, supra, recognize his right to unilaterally reduce his support payments for those months in which he had Jacques, Jr. in his home with Ms. Dickson's consent. According to this jurisprudence,
[W]hen a child resides with the parent ordered to pay support (the obligor parent) at the request of the other parent for a substantial period of time, and ... the obligor parent provides the full support for the child.... the child support due ... is suspended by an implied agreement between the parents....
Palmer at p. 5, 665 So.2d at 51. The Palmer court held that, as a matter of law, under such circumstances the obligor parent would be entitled to a credit against his arrearages for each month he had the child in his household, despite the trial court's finding that there was no clear agreement to waive or modify the court-ordered support payments. Id. at p. 6, 665 So.2d at 51. It was noted, however, that the support judgment at issue *762 in that case was not an in globo award, a factor that might have led to a different result. Id. at p. 6, 665 So.2d at 51-52.
In contrast to this jurisprudence, however, a review of Fourth Circuit cases involving informal custody changes reveals that this Court has consistently emphasized the Dubroc requirement that a mutual agreement be clearly proven before an extrajudicial support modification will be enforced. For example, in In re Andras, 410 So.2d 328, 331 (La.App. 4th Cir.1982), it was noted that "[t]he Trial Judge found, and we agree, that Mrs. Andras consented to her minor child's living with Mr. Andras and agreed to a suspension of the $400.00 child support payments...." [Emphasis added.] Similarly, in LeGlue v. LeGlue, 404 So.2d 1268, 1269 (La.App. 4th Cir.1981), the panel relied upon the lower court's factual finding of a mutual agreement, stating that "[a]lthough the wife testified that she had not agreed to a reduction in support, the trial judge obviously accepted the father's testimony that there was a mutual agreement for the deduction. We find no error in the trial court's conclusion." Thus, in both cases this Court affirmed the judgments granting credit against support arrearages for months in which the children lived with the obligor parent.
Significantly, a different result is seen in Burbano v. Burbano, 417 So.2d 400 (La.App. 4th Cir.1982), where, as here, there were informal shifts in child custody. The trial court refused to reduce the father's support arrearages for any of the months that one or both of his children lived with him. However, this Court found that the total rejection of the father's claim was error, because the mother acknowledged at trial that she had told Mr. Burbano he could reduce his payments for a specific eight-month period when their son lived with him. Id. at 402. While there were additional months when the father had custody of the children, however, the Burbano panel expressly held that no credit against arrearages were due for those months because the mother "unequivocally denied that she had entered into any agreement" to modify the court-ordered payments. Id. Therefore, the trial court's judgment was amended to reduce the arrearages only for the eight months agreed upon by the parties. Id. at 403.
Considering these precedents and the facts presented here, we decline to extend Dubroc to permit an extrajudicial support modification absent the clear consent of both parties. In this case, as in Burbano, Ms. Dickson denied that she had agreed to any reduction or suspension of the court-ordered support payments, and the trial court credited her testimony. Furthermore, although Mr. Burnette emphasizes that Jacques, Jr. benefited from the modified custody arrangement, he ignores the fact that, for most of the period for which he is claiming credit, Ms. Dickson still had the expense of maintaining a home for their minor daughter, Jamie. Although Jamie attained eighteen in August 1995, even this event did not entitle Mr. Burnette to unilaterally reduce, much less terminate, his monthly in globo support payments. La.R.S. § 9:315.22 B; State v. Lott, 615 So.2d 452, 455 (La.App. 4th Cir. 1993). We are thus unable to conclude that the alleged agreement to modify Mr. Burnette's support obligation was in the best interests of both children included in the prior award, as required under Dubroc. We, therefore, affirm the trial court's determination that Mr. Burnette is liable to Ms. Dickson for $300.00 per month from June 1990 through April 1997, less the $2,210.00 paid prior to trial.
Mr. Burnette next contends that the trial court erred in awarding attorney fees because he had good cause for not making the required payments. He argues that because he did not know where Ms. Dickson was living from mid-1990 to mid-1992, her deliberate concealment of her whereabouts justified his failure to pay, as was held in O'Shea v. O'Shea, 499 So.2d 1236 (La.App. 4th Cir.1986). Shortly after he learned of the new address, he asserts, Ms. Dickson consented to his reduced payments, as previously argued. Because he thus had good cause for his lapses in payments, Mr. Burnette maintains that the award of attorney fees must be reversed.
La.R.S. § 9:375 A states:

*763 When the court renders judgment in an action to make executory past-due payments under a ... child support award,... it shall, except for good cause shown, award attorney's fees and costs to the prevailing party.
Under this provision, the trial court is given great discretion in determining the amount to be awarded to the prevailing party. Fuge v. Uiterwyk, 97-1252, p. 4 (La. App.4th Cir. 3/25/98), 709 So.2d 357, 359, writ denied, 98-1099 (La.6/5/98), 720 So.2d 1205, and cases cited therein.
In the instant case, Mr. Burnette admitted at trial that even though his ex-wife and children had moved in 1990, Ms. Dickson's mother continued to occupy the other half of the duplex the family had previously shared. He also knew where Ms. Dickson worked throughout 1990-92, but claimed that he could not direct any payments to either address because a "peace bond" prohibited all contacts with his ex-wife's family. As previously noted, it was demonstrated that Mr. Burnette's payments even after he "found" Ms. Dickson were sporadic and well below the amounts due under the 1990 judgment. Given this testimony, we find no error in the conclusion that the defendant had not established good cause for nonpayment, as required to avoid liability for attorney's fees under R.S. § 9:375.
Finally, Mr. Burnette maintains that an award of $2,500.00 for attorney fees is excessive because the trial of this matter was completed in half a day. However, it is well-established that such an award is intended to encompass all services rendered in the cause, as reflected by the record, and not merely court appearances. Zatzkis v. Zatzkis, 632 So.2d 302, 307 (La.App. 4th Cir. 1993), writs denied, 94-0160, 94-0976 (La.6/24/94), 640 So.2d 1340; In re Andras, 410 So.2d at 331. On the record presented, we cannot say that the award of $2,500.00 was an abuse of discretion. Accordingly, we affirm the trial court's attorney fee award.
Although not assigned as error in this appeal, Mr. Burnette's counsel pointed out at the close of trial that Ms. Dickson's prayer for a judgment in excess of $40,000.00 was erroneous because it represented "a compilation" of the amounts due under the prior executory judgment as well as the subsequent arrearages. We agree that the inclusion of the principal and interest due on the 1990 judgment, which remains valid and executory, was a legal error that must be corrected. La.Code Civ.Proc.Ann. art. 2164. In addition, because Mr. Burnette did not designate which of his debts he intended to satisfy with the $6,000.00 paid at trial, that payment should be credited against the prior interest bearing judgment. La.Civ.Code Ann. art. 1868. Accordingly, the judgment appealed from will be amended to delete these amounts.

CONCLUSION
For the reasons assigned, the judgment of June 11, 1997 is amended to delete the awards of $7,310.00 and $4,313.41 due under the 1990 judgment, and is further amended to delete the $6,000.00 credit granted against the total awarded. As amended, the judgment is affirmed at appellant's cost.
JUDGMENT AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] Although the plaintiff is referred to as Judith Dickson Burnette in the pleadings, she indicated at trial that she has reverted to using her maiden name.
[2] Other provisions of that judgment are not relevant to this appeal.
[3] The amounts itemized in the judgment actually total $38,113.21.