| MURRAY, J.,
concurring in part and dissenting in part, with reasons.
The multiplicity of views expressed in this case, seen in the trial court’s judgment as well as the majority and concurring opinions, reflects the various attempts to do substantial justice despite a very confusing record. Because I, also, take a different view of the evidence and issues presented, I cannot entirely agree with either the result or the reasoning of my brethren.
The first judgment for arrearages in this matter resulted from a hearing on November 30, 1994. Although the State’s intervention had been filed and approved April 7, 1994, it was not given notice of the hearing or any of the motions set for consideration. Both Mr. and Ms. Brown appeared at this hearing, represented by private counsel. Evidence was presented on Mr. Brown’s November 1993[1] “Rule to Decrease Child Support” and Ms. Brown’s “Motion for Contempt, Attorney Fees, Costs and to Accumulate and Make Ar-rearages Executory” that had been filed April 22, 1994. A written judgment was rendered December 5, 1994, denying Mr. Brown’s motion for a reduction and specifically ^finding that he “was discharged from his employment for his own misconduct” and was thus voluntarily underemployed. Ms. Brown’s motion for a contempt order was granted, and the arrearages were determined to be *47 $14,703.42.[2]
On December 2, 1994, after the November 30th hearing but prior to entry of the resultant judgment, Mr. Brown’s attorney, Janet M. Ahern, filed a second “Motion for Reduction of Child Support Payments.” The motion was served on Ms. Brown’s private counsel ten days after filing, but there was no request for service on the State. On December 9th, Ms. Ahern filed a “Request for Notice” under Article 1572 of the Code of Civil Procedure, formally requesting written notice of any and all trials, hearings, judgments and orders .[3] Mr. Brown’s motion for a reduction was set for hearing on February 1, 1995, but the record does not reflect that any such hearing took place.[4]
On August 31, 1995, the State'filed its first “Rule for Contempt and to Make Past Due Child Support Executory,” alleging that Mr. Brown had failed to make twenty-two monthly payments since May 1993 and thus owed $24,398.00 in support through July 1995. The rule was set for hearing on January 19, 1996, with a request for service on Mr. Brown and Ms. Brown, individually, as well as the Assistant District Attorney (ADA) who had filed the pleading. However, the only service return in the record indicates Ms. Brown was served personally with the rule on September 6th.
On November 27, 1995, the State filed a “Motion to Reset for Hearing,” 1 ¡¡specifying that “the State’s Rule for Contempt and to Make Past Due Child Support Executory ... has been reset to December 22, 1995.” The motion to reset was approved by the Court, and was served at Mr. Brown’s domicile on December 1,1995.
According to the judgment rendered in open court December 22, 1995, only the ADA, Ruben Brown and Darlene Brown appeared at the hearing that date. Mr. Brown was cast for $29,120.42[5] in arrear-ages through December 18, 1995, plus interest, payable to the State through an immediate income assignment. It was further decreed that Mr. Brown was to pay attorney fees, but he would not be required to provide health insurance for the children. An annotation in the record indicates that the State’s Rule for Contempt was continued “to be re-set.”
On May 17, 1996, the State’s second “Rule for Contempt and to Make Past Due Support Executory” was filed, claiming Mr. Brown owed 4.74 payments totaling $5,258.58 as of May 13, 1996. This rule was set to be heard July 19, 1996, and the pleading indicates Mr. Brown was to be served at his domicile. However, the record contains no proof of service on anyone. While it appears that the matter was not heard as scheduled, there is nothing to explain any delay in the hearing.
On December 10, 1996, the State filed a “Rule to Revoke Licenses” under R.S. _ 9:315.32. The pleading, filed at pages 90-91 in the record, asserts that since December 22, 1995, Mr. Brown “missed 35 payments ... totalling $39,276.00 as of [sic] without good cause.” This rule was set for April 25, 1997, and service was requested on both the ADA and Mr. Brown, individually. The Civil Sheriffs return on service of the *48 rule to revoke licenses appears at page 92 of the record, 14clearly stating that domiciliary service was made January 15, 1997 on Ruben Brown of the following:
Document Type: Rule to Revoke License for Past Due Child Support Filed by Attorney: Trina T. Wilson Date of Filing: 12/09/96 Attachments/Exhibits:
Thus, the service return establishes only that the Rule to Revoke Licenses was served on Mr. Brown. There is nothing that suggests that the State’s May 1996 Rule for Contempt was included or attached to this Rule when service on Mr. Brown was effected.
Nevertheless, a judgment was rendered against Mr. Brown on April 25, 1997, reciting that “the State’s Rule for Contempt and to Make Past Due Support Executory” had been heard that date. The judgment stated that Ms. Brown was present, as well as the ADA, but indicated that Ruben Brown was “absent after receiving domiciliary service on 1-15-97.” It decreed that Mr. Brown’s arrears totalled $43,914.80 as of April 22, 1997, and that this amount was made executory. Although this judgment in favor of the State provided for interest, , attorney fees, health insurance and an income assignment, there was no adjudication of contempt. Notice of judgment, as required by Article 1913 B of the Code of Civil Procedure, was not issued.
On January 13, 1998, the State filed its third “Rule for Contempt and to Make Past Due Support Executory,” alleging that since December 18, 1995 Mr. Brown “has missed 47.60 payments ... in the amount of $52786.80 as of January 8, 1997[sic].” The State sought an executory judgment for that amount plus legal interest, attorney fees and costs, as well as an adjudication of contempt, income assignment and an order that Mr. Brown provide health insurance for the minor children. A hearing was set for February 6, 1998 and, as requested, service was |smade on both the ADA and Mr. Brown, individually.
On February 6,1998, Mr. Brown’s attorney, Ms. Ahern, filed a Motion to Reset the State’s Rule, indicating that further service was waived; Mr. Brown signed below his attorney’s signature and address. This motion was granted and signed that same day, continuing the Rules for Contempt and for Arrearages to February 20th. Ms. Ahern’s motion requesting that Mr. Brown’s December 1994 Rule to Decrease Child Support also be heard on February 20th was granted.[6]
At the hearing February 20, 1998, Mr. Brown admitted that since September 1993, his only support payments were those made through wage garnishments paid to the State. He testified that between December 1994 and mid-1995, he had worked for two employers, earning $125.00/week and $200.00/week, respectively, with nothing withheld for support. From September to November 1996, he worked for Lafitte Industries for $6.00/ hour subject to garnishment; he then was employed at the same rate of pay by Max Welding (MLC Services, Inc.), which also withheld support payments from his checks. Since March 6, 1997, Mr. Brown has worked continuously for Fab Con at $12.50/hour for “seven on, seven off,” resulting in his being paid for 84 hours every two weeks. Fab Con also has been garnishing his wages for the State. On cross examination, Mr. Brown acknowledged attending court in December 1995 and agreed he probably did not ask for a continuance or tell the judge he had an attorney. However, when asked about his motion for a reduction, Mr. Brown stated, “I don’t understand all them questions.”
Ms. Brown testified that she has worked for the New Orleans Sewerage and Water Board since 1992. She estimated her December 1994 gross earnings to be $1,009.00/month, but stated that she has been earning $1,141.00/month for about Rone year prior to the hearing. The cou- *49 pie’s oldest child, Ruben III, dropped out of school before he attained eighteen in October 1994, and their middle son, Corey, began receiving monthly Supplemental Security Income (SSI) checks at some point after that. Ms.- Brown testified that the SSI is based upon her salary and the- child support actually received. Therefore, the amount of Corey’s benefit checks varies and is subject to retroactive adjustments, but generally is approximately $444.00/ month.
The custodian of the Orleans Parish District Attorney’s child support records presented, among other things, a computer printout showing the payments received through garnishment from September 10, 1996 through the most recent payment on January 26, 1998. This witness calculated that these payments totaled $4,679.33, while the file contained Ms. Brown’s original April 1994 report that nothing had been received since September 1993. Therefore, the State’s records showed Mr. Brown’s arrearages to be $52,988.67.[7] On cross examination, the records custodian agreed that this figure “would be duplicitous to a judgment that was taken by private counsel” if, in fact, a judgment was previously entered in December 1994.
The matter was taken under advisement, and the trial court invited memoran-da from the parties. On March 10, 1998, the judgment that is the subject of this appeal was rendered, accompanied by written reasons. In this judgment, it is expressly decreed that:
... Ruben Brown, Jr. shall pay child support in the amount of $316.00 per month .... with the decrease made retroactive to December 2,1994.
... the child support arrears shall be recalculated retroactive to December 2, 1994, and that Ruben Brown, Jr. shall pay arrears in the amount of $84.00 per month.
|7... Darlene Lewis Brown shall carry insurance coverage for the minor children. Further, Ruben Brown, Jr. shall be responsible for 68% of all extraordinary medicals for the minor children.
This March 1998 judgment, like the judgments of December 1995 and April 1997, did not include a contempt adjudication.
In its appeal to this court, the State has assigned three errors, set forth in its brief as follows:
1. The trial court erred when it made the decrease in child support retroactive to 1994. •
2. The trial court erred when it deviated from the child support guidelines ' when it calculated support and failed to mechanically apply them before the deviation:
3. The trial court erred as a matter of law when it failed to adjudicate more than $52,000 in past due child support.
Retroactive Reduction of Support
The State argues, and, the majority agrees, that because Mr. Brown had adequate notice of the hearings that resulted in the December 1995 and April 1997 judgments for arrearages, his December 1994 motion for reduction cannot be given retroactive effect. In my view, however, the record does not support the conclusion that Mr. Brown received adequate notice of both hearings.
When the State filed its first Rule in August 1995, the court should have required service on Mr. Brown’s attorney, because her Request for Notice had not been superceded by a withdrawal of representation. La.Code Civ. Proc. art. 1572. Nevertheless, the record reflects that Mr. Brown was given timely notice of the rescheduled hearing on this Rule through service of the State’s Motion to Reset. Although this service did not provide complete details of the issues and arguments to be presented at the December 22nd hearing,[8] it clearly stated that Mr. Brown’s *50 Isliability for past-due child support as well as a Rule for Contempt would be considered. The defendant apparently understood that these matters were serious enough to warrant his attendance at court; his failure to realize that he should also consult his attorney in advance of the hearing cannot be attributed to the State or the judicial system. On these facts, I agree with the majority that the judgment of December 22, 1995 was rendered after adequate notice to Mr. Brown.
However, I do not agree that the record establishes that Mr. Brown (or his attorney) was given adequate notice of the State’s second Rule for Contempt and to Make Past Due Support Executory, which was filed in May 1996. '
The record establishes only that Mr. Brown was notified in January 1997 that he was to “show cause on 25 April 199[7] at 9:00 a.m. why, after due proceedings, any and all licenses he holds should not be revoked” because of his failure to pay child support. Mr. Brown was not put on notice that a money judgment of any amount might be rendered in connection with that Rule.[9]
Because neither Mr. Brown nor his attorney was served with the State’s second Rule, as required by Civil Procedure article 2594 as well as by fundamental due process, I find that the judgment rendered April 25, 1997 is an absolute nullity, and is not an obstacle to a retroactive reduction in the defendant’s child support obligation. See Barrios v. Barrios, 95 1390, pp. 5-7 (La.App. 1st Cir.2/23/96), 694 So.2d 290, 293-94, writ denied, 96-0743 (La.5/3/96), 672 So.2d 691, and cases cited therein. Despite this conclusion, I agree with the majority that Mr. Brown is not entitled to a retroactive reduction in child support.
The record establishes that Mr. Brown failed to prove the requisite change in circumstances under R.S. 9:311 A. The judgment of December 5, 1994 denied [9his motion to reduce child support based on the trial court’s determination that Mr. Brown had been voluntarily underemployed since September 1993, when he was discharged because of his own misconduct from a job at which he earned $16.21/hour. Mr. Brown has continued to be voluntarily underemployed since that time, earning $6.00/hour or less, 'intermittently, throughout 1995 and 1996, and $12.50/hour since March 1997. The only significant decrease in Mr. Brown’s income occurred prior to both of his Motions to Reduce; in between the date his second motion was filed and then heard, his income had significantly increased.
Nor do I agree that Mr. Brown is automatically entitled to a reduction of the in globo support award because his oldest child has reached age eighteen. See R.S. 9:315.22 B. Finally, as discussed more fully below, I do not agree that the SSI received by another of the couple’s minor children should offset Mr. Brown’s monthly support obligation. I, therefore, concur in the majority’s reversal of the retroactivity given to Mr. Brown’s motion for reduction.
Calculation of Prospective Monthly Support Award
I find merit in the State’s contention that the trial court erred in fixing Mr. Brown’s monthly support obligation at only $316.00 per month.
The State complains that this results in an unjustified and unexplained deviation from the statutory guidelines, necessitating a recalculation pursuant to R.S. 9:315 et seq. The majority rejects this position, and further finds that Mr. Brown is enti- *51 tied to a reduction equal to the amount of Corey’s disability payments.
Based upon the parties’ allegations at the February 1998 hearing, the combined monthly income of these two parents is at least $3,400.00,[10] which |inwould result in a scheduled support obligation of $794.00 for the two minor children. However, no evidence or testimony appears in the record regarding Ms. Brown’s child care expenses, if any, or concerning the availability and cost of health insurance coverage to either parent. There is no worksheet in the record that would clarify the district court’s calculation. In my view, therefore, the record evidence does not support the trial court’s reduction of Mr. Brown’s monthly support obligation from $1,109.00 to a mere $316.00, plus $84.00 towards arrearages. Accordingly, I would remand on this issue for the submission of further evidence and inclusion of a worksheet, as well as for specific oral or written reasons for any deviation, as required by 9:315.1 B.
However, on remand I would prohibit any deduction, credit or offset for Corey’s SSI payments in recalculating Mr. Brown’s prospective support obligation.
SSI benefits, unlike the Social Security dependent’s benefits at issue in the Phillips and Corley cases cited by the majority, is based upon a recipient’s income. Corey’s SSI payment is reduced when Mr. Brown pays child support. This, as well as the states’ increased involvement in child support enforcement, is a recognition that the support burden should be borne by parents, such as Mr. Brown, who can afford to provide some portion of their children’s basic living expenses. Allowing Mr. Brown to “offset” his support obligation undermines that policy. Accordingly, I respectfully dissent from the majority’s discussion and resolution of this issue.
Failueb to Accumulate
In its final assignment of error the State contends that a judgment for more than $52,000.00 should have been entered as of March 1998 because its records showed that was the amount Mr. Brown owed since his last voluntary payment in September 1993. On the record presented, I find this argument to be meritless. Indeed, in my opinion, the interests of justice require modification of judgments ^previously rendered.
As it presently stands, the three judgments entered against Mr. Brown total $87,738.64. The State’s argument for entry of another judgment for $52,988.67, the accumulated arrearages calculated at the most recent hearing, presumes that one judgment for arrearages automatically su-percedes or nullifies all prior judgments. I find no basis in the law nor has the State offered any authority for this proposition. Therefore, even without a retroactive reduction in the support due from Mr. Brown, the State clearly is not entitled to a judgment in the amount sought. See Burnette v. Burnette, 98-0498, p. 12 (La.App. 4th Cir.10/21/98), 720 So.2d 757, 763.
In my view, because Mr. Brown’s total judgment debt clearly exceeds the actual total owed, justice requires not only that the April 1997 judgment be annulled and vacated in its entirety for lack of notice, but that the December 1995 judgment be amended by the trial court. Under Civil Procedure article 1951(2), an error in calculation may be corrected at any time. The record now before this court clearly establishes that the judgment rendered December 22, 1995 contains a calculation error that should be corrected.
For these reasons, I join in the majority’s reversal of the grant of a retroactive reduction in support, but dissent from its affirmation of the $316.00 per month child support ordered by the trial court. Instead, I find that a remand is necessary to *52 fix the monthly amount based upon the parties’ current income, without allowing any deduction for Corey’s SSI payments. In addition, I would annul and vacate the judgment of April 25, 1997, and order an amendment to the judgment of December 22, 1995 to deduct $14,703.42, the amount of the prior 1994 judgment, from the total arrearages made executory.

. This rule was initially set for February 9, 1994, but on that date an entry was made showing it was continued without date by consent of the parties. Subsequently, in May 1994, Janet M. Ahern was substituted as Mr. Brown’s counsel of record.

. It was shown that Mr. Brown’s last payment was for September 1993, and a consent judgment in June 1994 gave Ms. Brown. $822.18 from a bank account as a credit against child support owed. This judgment for arrearages thus represents all payments due for October 1993 through November 1994 [ (14 x $1109) — $822.18].

. Ms. Ahern's certificate of service states that she mailed a copy of this Request to "all attorneys of record" on the date it was filed, but it appears that the State, represented by the Orleans Parish District Attorney’s Office, was not included among the recipiénts.

. Because Orleans Parish Civil District Court does not prepare minute entries, there is no indication why the motion was not heard as scheduled.

. The basis for this total cannot be determined: October 1993 through November 1995 equals 26 months x $1109.00 = $28,-834.00, but the additional $286.42 is not an even fraction of one month's payment.

. The ADA received timely service of this motion.

. [(52 x $1109) — $4679.33]

. Because there was no proof that either Mr. Brown or his attorney had been served with *50 this Rule, it would have been prudent to attach a copy of the original Rule to the State’s Motion to Reset for service purposes.

. In fact, service of the second Rule would have put Mr. Brown on notice that the State considered him to be about $5,300.00 in arrears, which is nowhere close to the $43,-914.80, plus interest and attorneys fees, actually awarded in the judgment on the State’s second Rule.

. Ms. Brown’s salary is $1,141.00 per month; Mr. Brown earns $12 .50/hour x 84 hours = $1,050.00 every two weeks x 26 = $27,300.00/year month. 12 months = $2,275.00/