KELLIE DESCANT CAHN

VERSUS

MIKE CAHN

\* \* \* \* \* \* \*

       \*       NO. 2022-CA-0801

       \*

               COURT OF APPEAL

       \*

               FOURTH CIRCUIT

       \*

               STATE OF LOUISIANA

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-11076, DIVISION "H"
Honorable Monique E. Barial, Judge
\* \* \* \* \* \*
**Judge Roland L. Belsome**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Rosemary Ledet, Judge
Sandra Cabrina Jenkins)

Jeffrey M. Hoffman
Gordon J. Kuehl
Sarah J. Flettrich
Elizabeth K. Fox
HOFFMAN, NGUYEN, AND KUEHL, LLC
643 Magazine St.
Suite 401
New Orleans, Louisiana 70130

      COUNSEL FOR PLAINTIFF/APPELLANT

Marc D. Winsberg
Jonathan D. Gamble
WINSBERG HEIDINGSFELDER & GAMBLE, LLC
650 Poydras Street, Suite 2050
New Orleans, Louisiana 70130

      COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED; EXCEPTION DENIED**
**June 14, 2023**

In this domestic case, Ms. Cahn appeals the September 16, 2022 judgment, which granted, in part, Mr. Cahn's motions for contempt, attorney's fees, costs and motions to make past due child support executory. Ms. Cahn also raises a peremptory exception of no right of action (or in the alternative, no cause of action) with this Court. For the reasons set forth below, the judgment of the trial court is affirmed and the exception is denied

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

In connection with their divorce, Mr. and Ms. Cahn executed a Consent Judgment,[1] wherein they agreed to the joint and shared custody of their two minor children, with Ms. Cahn designated as the domiciliary parent. Mr. Cahn was responsible for child support in the amount of $198.00 per month. As an additional component of the total child support obligation, the Consent Judgment provides that, effective October 22, 2019, the parties are responsible for their pro-rata percentage (Ms. Cahn 46% and Mr. Cahn 54%) of the following expenses:

---

[1] The Consent Judgment was signed by the trial court on January 8, 2020.

1

1) Any deductibles and other ***medical expenses attributable to the minor children, not covered by insurance***; (Emphasis added).

2) Any and all mutually agreed upon camp and extracurricular activities; and,

3) Any reasonable and/or necessary educational expenses of the minor child, including but not limited to ***tuition***, registration, books, supplies, uniforms, school lunch, activity fees and tutoring. (Emphasis added).

On April 1, 2022, Mr. Cahn filed his first motion for contempt and to make past due support executory, asserting that he paid the entire 2020/2021 and 2021/2022 Isadore Newman School tuition for the minor children, and that Ms. Cahn refused to reimburse him for her 46% share ($35,169.59). The motion further asserted that Mr. Cahn made formal demand for reimbursement on February 24, 2022, providing Ms. Cahn with his proof of payment.

On April 13, 2022, Mr. Cahn also paid the full amount of the tuition for the 2022/2023 school year. On May 12, 2022, Mr. Cahn filed a second motion for contempt and to make past due support executory, asserting that in an April 14, 2022 email, he provided a copy of his receipt for the tuition payment to Ms. Cahn seeking reimbursement for her 46% share ($12,716.00). The motion further maintains that Mr. Cahn's attorney made formal demand for reimbursement by letter to Ms. Cahn on April 28, 2022, to no avail. Additionally, the second motion alleges that Mr. Cahn paid the medical expenses associated with an MRI for one of the minor children in late March 2022, for which, Ms. Cahn's 46% share was $521.71. Again, Mr. Cahn alleged that Ms. Cahn ignored his demand for reimbursement.

Both matters were brought for hearing on August 30, 2022. In opposition to the motions for reimbursement and contempt, Ms. Cahn asserted that she and Mr.

Cahn entered into an extrajudicial agreement, which abrogated her obligation under the Consent Judgment to pay the tuition. She further argued that she did not willfully disobey the Consent Judgment on the issue of the child's medical expenses.

After the introduction of evidence and the testimony of both parties, judgment was rendered in open court and signed on September 16, 2022. As to Mr. Cahn's first motion, Ms. Cahn was ordered to reimburse Mr. Cahn $35,169.59 representing her share of the 2020/2021 and 2021/2022 tuition. Ms. Cahn was not found to be in contempt of court on that claim. Regarding the second motion, Ms. Cahn was ordered to reimburse Mr. Cahn $12,716.00, representing her share of the 2022/2023 tuition. No contempt of court was found. Finally, Ms. Cahn was ordered to reimburse Mr. Cahn $521.71 for her share of the minor child's medical expenses and was determined to be in contempt of court. Ms. Cahn's timely devolutive appeal followed.

**LAW AND ANALYSIS**

***Exception Raised on Appeal***

As a procedural matter, we first note that Ms. Cahn has filed an exception of no right of action (or in the alternative, exception of no cause of action) with this Court, asserting that: 1) pursuant to La. R.S. 9:315.8[2] and La. C.C.P. art. 3946[3], Mr. Cahn is not entitled to bring an action for arrearages for child support; and 2)

---

[2] La. R.S. 9:315.8(D) provides in part that "[t]he party without legal custody or non-domiciliary party shall owe his or her total child support obligation as a money judgment of child support to the custodial or domiciliary party…."

[3] La. C.C.P. art. 3946(A) provides that the party entitled to a support payment may file a contradictory motion to have the amount of past due support determined and made executory.

3

pursuant to La. C.C.P. art. 224[4], Mr. Cahn is not entitled to bring an action for contempt for failure to pay child support.

The exception of no right of action and the exception of no cause of action are peremptory exceptions. La. C.C.P. art. 927. "The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record." La. C.C.P. art. 2163.

"Both the exception of no right of action and the exception of no cause of action involve questions of law." *Hornot v. Cardenas*, 2006-1341, p. 12 (La. App. 4 Cir. 10/3/07), 968 So.2d 789, 798. "[O]ne of the primary differences between the exception of no right of action and no cause of action lies in the fact that the focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit, while the focus in an exception of no cause of action is on whether the law provides a remedy against the particular defendant." *Downtown Dev. Dist. of New Orleans v City of New Orleans*, 2018-0726, pp. 5-6 (La. App. 4 Cir. 5/8/19), 272 So.3d 917, 924 (quoting *Badeaux v. Sw. Computer Bureau, Inc.*, 2005-0612, p. 6 (La. 3/17/06), 929 So.2d 1211, 1216-17).

In the present case, while the exception of no cause of action is asserted in the alternative, it is evident from Ms. Cahn's brief that her claim focuses on Mr. Cahn's right to bring the action for reimbursement and contempt. More specifically, Ms. Cahn argues that because Mr. Cahn is the non-domiciliary parent who owes child support as a money judgment (referring to his obligation to pay her $198.00 per month), only Ms. Cahn would have the right to bring an action for

---

[4] La. C.C.P. art. 224 provides that disobedience of a court order, such as an order for the payment of child support, is constructive contempt of court.

arrearages and for contempt. We find this argument to be without merit, as Ms. Cahn neglects to consider that pursuant to the Consent Judgment, the parties had a joint custody arrangement requiring them both to pay a set percentage of tuition and medical expenses as an "additional component of the total child support obligation." This stipulation clearly delineates Ms. Cahn's child support obligation regarding tuition and medical expenses. Given that obligation, we conclude that under the circumstances presented, Mr. Cahn had a right to file these actions against Ms. Cahn for her failure to fulfill her child support obligation. Accordingly, Ms. Cahn's exception is denied.

***Assignments of Error***

In her appeal, Ms. Cahn asserts that the trial court committed legal error in: 1) applying the Equal Dignity Rule[5] (as opposed to the jurisprudential rule) to determine whether a valid and enforceable extrajudicial agreement existed between the parties, which abrogated the January 8, 2020 Consent Judgment; and 2) granting Mr. Cahn's second motion for contempt by finding that the issue before the court was whether Ms. Cahn failed to reimburse, rather than to pay her pro-rata share of extraordinary expenses. Alternatively, Ms. Cahn submits that the trial court erred in finding that Mr. Cahn met his burden of proving that she willfully disobeyed the Consent Judgment.

The crux of Ms. Cahn's argument in this case regarding the payment of tuition is that she and Mr. Cahn entered into an extrajudicial agreement, which

---

[5] La. C.C. art. 2993 provides: "The contract of mandate is not required to be in any particular form. Nevertheless, when the law prescribes a certain form for an act, a mandate authorizing the act must be in that form." The second sentence of La. C.C. art. 2993, is often referred to as the "equal dignity rule." *Havard v Jean Louis*, 2021-00810 (La. 6/29/22), 345 So.3d 1005, 1013 (Crain, J., dissenting) (citing Wendell H. Holmes & Symeon C. Symeonides, *Representation, Mandate, and Agency: A Kommentar on Louisiana's New Law*, 73 Tul. L. Rev. 1087, 1122 (1999).

abrogated her obligation under the Consent Judgment to pay 46% of the tuition. At trial, Ms. Cahn supported this assertion with the introduction of the two following text messages, which she received from Mr. Cahn.

*January 28, 2020 text messages:*

> I will pay the rest of the Newman bill for the years tuition for both of them. I will have to liquidate and sell stocks as usual, when that bill comes please let me know. It will take a few weeks to get the cash.

> I am not requiring you or asking you to pay the 45% of Newman or holding you to that agreement as I promised before. I will pay the Newman Tuition. Please let me know when the final bill comes in.

*April 14, 2020 text message:*

> I have been really fair and honest. Everything I told you I would do I have done. I have paid the bills I agreed to and paid the others you said and agreed to pay but haven't yet. I have still been paying them and haven't said a word till today. Even though you are supposed to pay 40% of Newman and other things I told you I wouldn't make you do that and I lived up to my word. I just had to sell more stocks and come up with $50,000.

In his testimony before the trial court, Mr. Cahn acknowledged the text messages, but explicitly denied that his statements represented an extrajudicial agreement to absolve Ms. Cahn from her obligation to pay her share of the tuition. Mr. Cahn explained that when he sent the texts he understood from Ms. Cahn's assertions that the divorce would be amicable. However, when the divorce proceedings later became contentious and extensive legal fees were being incurred, he expected Ms. Cahn to pay her share or at least reimburse him for her share of the tuition. When asked why he paid the full tuition, Mr. Cahn stated that he "paid all of the Newman bills otherwise, the children would not be in school right now."

In connection with his payment of the tuition and the medical expenses incurred by one of the children, Mr. Cahn introduced emails and/or

letters sent to Ms. Cahn and/or her attorney, requesting reimbursement and including his paid receipts. He testified that Ms. Cahn did not respond to his requests for reimbursement.

Ms. Cahn testified that from the time the children were in preschool at Isadore Newman, it was established that she would never be responsible for the tuition. When asked why she agreed in the January 8, 2020 Consent Judgment to pay 46% of the tuition, Ms. Cahn only stated that she and Mr. Cahn "talked separately" that she was never going to have to pay the tuition. No further explanation was provided.

Ms. Cahn acknowledged that she received Mr. Cahn's requests for reimbursement for the tuition and the medical expenses. She admitted that she never responded.

After the testimony of the parties and the introduction of evidence, the trial court determined that Ms. Cahn owed reimbursement for her share of the school tuition and medical expenses. Ms. Cahn was found to be in contempt of court only as to her failure to reimburse Mr. Cahn for the medical expenses.

In finding that Ms. Cahn owed 46% of the tuition, the trial court remarked as follows:

> Under the Equal Dignity Rule, I do not mind that this is a ratification of a prior agreement. The Equal Dignity Rule would require that for him to change or modify an existing Order or consent of the parties, it has to be done in the same format, which would mean that it would need to be in writing, signed off on by both parties. That did not happen here. And so it is not a ratification of an agreement.

On appeal, regarding the trial court's oral reasons,[6] Ms. Cahn argues in her first assignment of error that the trial court committed legal error by applying the Equal Dignity Rule rather than the jurisprudential rule in finding that no extrajudicial agreement existed between the parties. We note that Mr. Cahn also acknowledges that the Equal Dignity Rule was improperly applied here. Both parties assert that the existence of an extrajudicial modification of a child support obligation must be determined in accordance with the applicable jurisprudence. We agree.

As discussed more fully below, and contrary to the trial court's comments, an extrajudicial modification of a child support obligation is not required to be in writing or signed by the parties. Nevertheless, we find that Ms. Cahn failed to meet her burden of proving the extrajudicial agreement.

"A reviewing court may not set aside a trial court or a jury's finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong.' " *Hicks v. USAA General Indemnity*, 2021-0840, p. 12 (La. 3/25/22), 339 So.3d 1106, 1115 (quoting *Evans v. Lungrin*, 97-541, p. 6 (La. 2/6/98), 708 So. 2d 731, 735). "However, where the trial court makes a legal error that interdicts the fact-finding process, the manifest error standard is no longer applicable and the appellate court may conduct a de novo review." *Id*.

_____

[6] It is a " 'well-settled rule that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment.' " *Wooley v. Lucksinger*, 2009-0571, 2009-0584, 2009-0585, 2009-0586, p. 77 (La. 4/1/11), 61 So.3d 507, 572 (quoting *Bellard v. American Cent. Ins. Co.*, 2007-1335, p. 25 (La. 4/18/08), 980 So.2d 654, 671). However, a court of appeal may review the trial court's reasons for judgment to "gain insight" into the trial court's judgment. *Id*., 2009-0571, 2009-0584, 2009-0585, 2009-0586, p. 78, 61 So.3d at 572; *See also Bruno v CDC Auto Transport, Inc.*, 2019-1065, (La. App. 4 Cir. 6/3/20), 302 So.2d 8, n. 11.

Here, considering the trial court's improper application of the Equal Dignity Rule, we must conclude that legal error interdicted the factual findings of the trial court. As the record on appeal is complete, we therefore conduct a *de novo* review in order to determine whether the parties entered into an extrajudicial agreement to modify the terms of the Consent Judgment.

In *Burnette v. Burnette*, 1998-0498, p.6 (La. App. 4 Cir. 10/21/98), 720 So.2d 757, 760-761, we discussed the enforceability of extrajudicial modification of child support obligations as follows:

> A child support judgment generally remains in full force until the party ordered to pay it has the judgment modified, reduced or terminated by a court. *Halcomb v. Halcomb*, 761 352 So.2d 1013, 1015-17 (La. 1977). However, the parties may modify or terminate child support payments by conventional agreement if it does not interrupt the children's maintenance or upbringing and is in their best interests. *Dubroc v. Dubroc*, 388 So.2d 377, 380 (La. 1980); *Johnson v. Johnson*, 430 So.2d 223 (La. App. 4th Cir. 1983). The party asserting an extrajudicial modification has the burden of proving a clear and specific agreement; mere acquiescence in accepting reduced payments does not waive the right to enforce the judgment. *Dubroc*, 388 So.2d at 380; *Johnson*, 430 So.2d at 224 (citations omitted). The trial court's resolution of this issue is a factual determination which cannot be disturbed on appeal absent manifest error. *Roberts*, 474 So.2d at 472.

Pursuant to the above, it was Ms. Cahn's burden to prove that the parties had a clear and specific agreement to alter the Consent Judgment. The only evidence presented by Ms. Cahn was Mr. Cahn's two text messages. We cannot conclude from a reading of the text messages that there was a clear and specific agreement between the parties. Moreover, the parties' trial testimony regarding the meaning behind Mr. Cahn's texts was conflicting, and provided no clarity on the issue. In sum, after our *de novo* review of the record, and in accordance with the jurisprudence, we find that

9

Ms. Cahn failed to carry her burden of proving the existence of an extrajudicial agreement. Thus, we must conclude that the trial court did not err in finding that Ms. Cahn owed reimbursement to Mr. Cahn for her percentage of the tuition.

In her second assignment of error, Ms. Cahn argues that the trial court erred in granting Mr. Cahn's motion for contempt regarding her failure to reimburse Mr. Cahn for her share of the child's uncovered medical expenses. She maintains that the January 8, 2020 Consent Judgment does not require her to "reimburse" Mr. Cahn, but only states that she is required to pay the expenses.

"Appellate courts review a trial court's finding of contempt by a manifestly erroneous standard." *State, through Dep't. of Children & Family Servs., Child Support Enforcement v. Knapp*, 2016-0979, p. 11 (La. App. 4 Cir. 4/12/17), 216 So.3d 130, 139 (citing *Jaligam v. Pochampally*, 2014-0724, p. 5 (La. App. 4 Cir. 2/11/15), 162 So.3d 464, 467). "The trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying a court order and the court's decision should be reversed only when the appellate court discerns an abuse of that discretion." *Id*. at pp. 13-14, 216 So.3d at 140 (citing *South East Auto Dealers Rental Ass'n, Inc. v. EZ Rent To Own, Inc*., 2009-0011, p. 8 (La. App. 4 Cir. 6/30/10), 42 So.3d 1094, 1099).

"Contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." La. C.C.P. art. 221. Constructive contempt includes willful disobedience of any lawful judgment or order of the court. La. C.C.P. art. 224(2).

"A contempt of court proceeding is either criminal or civil, which is determined by what the court primarily seeks to accomplish by imposing sentence." *Billiot v. Billiot*, 2001-1298, p. 4 (La. 1/25/02), 805 So.2d 1170, 1173 (citing *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966)). "In a criminal contempt proceeding, the court seeks to punish a person for disobeying a court order, whereas in a civil contempt proceeding, the court seeks to force a person into compliance with a court order." *Id*. (citing *State in the Interest of R.J.S.*, 493 So.2d 1199, 1202 & n. 7 (La.1986)).

As this Court explained in *Streiffer v. Deltatech Constr., LLC*, 2019-0990, pp. 9-10 (La. App. 4 Cir. 3/25/20), 294 So.3d 564, 573:

> Regardless of the type of contempt—direct or constructive; civil or criminal—a trial court has great discretion in deciding whether to find someone in contempt. *Kirschman v. Kirschman*, 12-0385, p. 2 (La. App. 4 Cir. 12/28/12), 109 So.3d 29, 31 (citing *City of Kenner v. Jumonville*, 97-125, 97-210, 97-602 (La. App. 5 Cir. 8/27/97), 701 So.2d 223, and *Reeves v. Thompson*, 95-0321 (La. App. 4 Cir. 12/11/96), 685 So.2d 575). Nonetheless, "a trial court's predicate factual determinations are reviewed under the manifest error standard in the case of a civil contempt, and under the standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the case of a criminal contempt." *Rogers v. Dickens*, 06-0898, p. 7 (La. App. 1 Cir. 2/9/07), 959 So.2d 940, 945 (citing *In re Milkovich*, 493 So.2d at 1189). If the evidence is sufficient, a finding of contempt will be reversed only when the appellate court can discern an abuse of the trial court's discretion. *See Fontana v. Fontana*, 13-0916, p. 24 (La. App. 4 Cir. 2/12/14), 136 So.3d 173, 188 (quoting *Smith v. Pillow-Smith*, 10-0167, p. 3 (La. App. 4 Cir. 11/17/10), 52 So.3d 264, 267 (in turn citing *Stephens v. Stephens*, 30,498, p. 5 (La. App. 2 Cir. 5/13/98), 714 So.2d 115, 118)).

In the present case, Ms. Cahn argues that the trial court's ruling was for criminal contempt because she was ordered to perform three hours of community service at the New Orleans Mission. She further argues that the trial court erred in finding that Mr. Cahn established beyond a reasonable doubt that she willfully disobeyed the Consent Judgment.

11

We agree with Ms. Cahn that this is a constructive criminal contempt proceeding, as it appears the intent behind ordering community service (in addition to ordering the payment of court costs and attorney's fees) was to punish Ms. Cahn for willfully disobeying the Consent Judgment. However, we find no error in the trial court's determination that Ms. Cahn was in contempt of court for failing to reimburse Mr. Cahn for her share of the minor child's medical expenses.

In finding Ms. Cahn in contempt, the trial court determined, as follows:

> There's nothing that indicates that there was ever an agreement as it relates to the payment of the medical bill. Ms. Cahn was put on notice as to request for reimbursement. She did not file an objection to the requirement to reimburse on any ground. She failed to make a payment of a valid and enforceable Order.

> She's in contempt of Court for failing to provide the reimbursement for the medical expenses.

Ms. Cahn was clearly aware of her obligation to pay a share of the children's uncovered medical expenses. Moreover, the record demonstrates that Ms. Cahn received correspondence from Mr. Cahn's attorney requesting reimbursement. She failed to respond to the request.

In her testimony before the trial court, Ms. Cahn conceded that she did not reimburse Mr. Cahn for her share of the bill, and provided no explanation for her failure to do so. Additionally, Ms. Cahn has not claimed that the parties entered into an extrajudicial agreement regarding the medical expenses. Accordingly, we cannot say that the trial court abused its discretion in holding Ms. Cahn in contempt for willfully disobeying the Consent Judgment.

**CONCLUSION**

Based on our *de novo* review, we conclude that the trial court did not err in determining that Ms. Cahn failed to meet her burden of proving that a clear and

12

specific extrajudicial agreement existed. Regarding the contempt ruling, we find that the trial court did not err in holding Ms. Cahn in contempt for failing to reimburse Mr. Cahn for her share of the minor child's medical expenses.

## DECREE

For the foregoing reasons, we affirm the September 16, 2022 judgment of the trial court. Additionally, we deny the exception of no right of action (or in the alternative, no cause of action) raised by Ms. Cahn in this appeal.

**AFFIRMED; EXCEPTION DENIED**