| MOAN BERNARD ARMSTRONG, Chief Judge.
This is an appeal by plaintiff-appellant, Wilbert Watts (‘Watts”), from a judgment of the trial court in favor of the defendants-appellees, Jacquelyn Taylor, Larry C. Watts, Bruce Watts, Denise Watts, and Carl A. Watts (“siblings”) and their attorney, David L. Bell, denying Watts’ motion for sanctions pursuant to La.C.C.P. Art. 863. For the reasons that follow, we affirm.
The series of events that precipitated this action began when Watts’ mother executed an act of donation on May 14, 1997, giving him sole ownership of the family home to the exclusion of his siblings. The siblings did not know of the donation until the time of their mother’s death on March 25, 2002. Shortly thereafter, Watts informed the two siblings who lived in the home, Jacquelyn Taylor and Larry Watts, that he intended to charge them rent. When they did not pay the rent, Watts filed an. eviction proceeding on April 15, 2002 in First City Court. A Judgment of Eviction was signed on April 22, 2002. The siblings, who had consulted with an attorney, David L. Bell, filed a Motion For Stay of Eviction in the First City Court proceeding.- They filed a Petition For Possession in Civil District .Court on the same date. The motion to stay the eviction alleged that the act of donation was accomplished through acts of deceit and fraud and that the | ¿mother was incapable of reading and therefore, unable to comprehend the instrument she signed.
Counsel for Watts filed a petitory action on July 23, 2002. Thereafter, on September 27, 2002, Mr. Bell filed a Motion To Transfer and Consolidate the petitory action with the siblings’ petition for possession. At the conclusion of the trial of the petitory action on April 30, 2003, the trial court issued a judgment in favor of Watts, finding that the act of donation was valid.
Watts filed a Motion For Sanctions Pursuant To C.C.P. Art. 863(D) on May 22, 2003, alleging that the defendants/siblings filed the verified Motion For Stay of Eviction and the Petition For Possession without reasonable inquiry, knowledge, information, or belief that the allegations were grounded in fact and that their motives in filing these pleadings were to prevent the eviction of the siblings who lived in the house and to harass Watts by causing unnecessary delays and needless costs of litigation.
Three of the siblings, Jacquelyn Taylor, Bruce Watts, and Larry Watts, testified at the trial on the motion for sanctions. The trial court did not allow Watts’ counsel to call Mr. Bell as a witness, but allowed him to proffer Mr. Bell’s testimony.
Jacquelyn Taylor testified that she lived with her mother all of her life and that she was her mother’s primary caregiver. Ms. *453 Taylor said she learned of the donation approximately one month before her mother’s death, when her mother asked her to go to the State Building to find out exactly what she had signed. She testified that her mother was coerced into executing the act of donation under the mistaken belief that the act of donation was for the purpose of insuring the property. She claimed that her mother was sick and on medication at the time of lathe donation. Furthermore, she contended that her mother was incapable of reading and therefore, was unable to understand the instrument that she had signed.
Ms. Taylor also testified that the siblings spoke to Mr. Bell before the eviction proceedings and that she showed him the deed to the house. Mr. Bell explained to the siblings that being named as heirs in the deed did not give them title to the house and that the siblings’ case would be difficult to win. She also said she provided Mr. Bell with the names of witnesses, including a Mississippi attorney, who had spoken to her mother concerning the status of the house. She verified that she answered Watts’ discovery demands and that the siblings paid Mr. Bell only $700-$800 to cover the cost of the litigation. She admitted that after Watts was adjudicated the owner of the house, she wrote on a wall of the house and she took some items that she claimed belonged to her. However, Ms. Taylor denied having filed the petition for possession and the motion to stay the eviction for the purpose of preventing her eviction or harassing her brother (Watts). She testified that her motivation in filing the pleadings was to carry out her mother’s wishes, who had said she wanted the house to remain a family home shared by all of her children.
Bruce Watts also testified that his mother could not read and that she could not have understood that the document that she signed conveyed the home to only one of her children. He stated that his intent in filing the pleadings was to carry out his mother’s wishes. He further stated that Mr. Bell went over the allegations contained in the petition for possession, the motion to stay the eviction, and the verification document clause by clause and that he believed in the validity of the pleadings. Additionally, he said that Mr. Bell talked to the siblings about some of the debts of the mother’s estate and obtained a list of her assets.
|4Larry Watts’ testimony reiterated his siblings’ contention that their mother could not read and therefore,. could not have understood the terminology used in the act of donation. He said his mother would not have signed the house over to just one child because his mother always told him that her house was to be a family home. His intention in filing the pleadings was to have the house remain a family home. He said he believed the allegations contained in the motion to stay the eviction and that Mr. Bell went over each of these allegations with him prior to filing suit. He denied having filed the motion to stay the eviction or the petition for possession in order to harass his brother.
Witnesses who testified on behalf of Watts included the attorney/notary who drafted the act of donation, his friend, Jeanette DuBois, and Watts. Watts’ testimony contradicted the testimony of his siblings. He claimed his mother could read and that he placed no pressure on her to donate the house to him. Jeanette Du-Bois, Watts’ friend, testified that his mother talked to her concerning a donation of the house and that she assisted the mother in locating the attorney who drafted the act of donation. DuBois also claimed that she heard Mr. Bell say at the eviction hearing that he did not care if the siblings were lying as long as they paid him. The *454 attorney/notary who drafted the act of donation said that the mother understood the document; however, she did not recall whether or not she asked her if she could read.
At the conclusion of the hearing, the trial court denied the motion for sanctions. Watts then filed the instant appeal from the trial court’s judgment.
In his first assignment of error, Watts’ alleges that the siblings’ alleged failure aggressively to litigate the petition for possession, the delays encountered in noticing the siblings’ depositions, the siblings’ inability to present objective proof | Bthat the act of donation was obtained fraudulently and the fact that one of the siblings wrote on the walls of the house prove that their pleadings were filed in bad faith. Watts also alleges that Mr. Bell’s failure to speak with the' attorney/notary who drafted the act of donation demonstrates that he did not conduct a reasonable inquiry into the validity of the siblings’ allegations. The siblings counter that they answered all written discovery demands, participated in depositions and that Mr. Bell filed the motion to consolidate the pleadings. Furthermore, they contend that they had good reason to believe the act of donation was obtained fraudulently because their mother could not read, was in ill health, had often expressed the wish that the house would remain a family home, and the deed to the house listed all of the children as “heirs”.
The trial court’s reasons for judgment included findings that Mr. Bell filed the pleadings in question after having made reasonable inquiry into the allegations and that the testimony of Jacquelyn Taylor, Bruce Watts and Larry Watts was credible regarding the information provided to Mr. Bell prior to the filing of the pleadings. The trial court also found that the allegations contained in the pleadings were based upon the siblings’ knowledge, information, and good faith belief, and that the pleadings were not filed for any improper purpose. The trial court further described the testimony of the siblings regarding the familial relationships and literacy of the decedent as credible.
Sanctions allowable under La. C.C.P. Art. 863 for pleadings made in bad faith are to be imposed only in exceptional circumstances. Aisola v. Metropolitan Life Ins. Co., 97-2145, p. 7 (La.App. 4 Cir. 4/22/98), 713 So.2d 568, 572; Curole v. Avondale Industries, Inc., 2001-1808, p. 5 (La.App. 4 Cir. 10/17/01), 798 So.2d 319, 322. Where even the slightest justification for assertion of legal rights exists, | ^sanctions for pleadings made in bad faith are not justified; only when the evidence is clear that no justification exists, should sanctions be considered. Id. In the present matter, the trial court concluded that the siblings presented adequate evidence to justify the filing of the motion to stay eviction and the petition for possession.
Although Watts argues that the proper interpretation of the siblings’ actions prior and subsequent to the time that the pleadings were filed and the testimony of witnesses who testified in favor of Watts can lead only to the conclusion that the siblings filed the pleadings in bad faith, the trier of fact is vested with assessing the witnesses’ credibility; and where there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Harvey v. State, Dept. of Transp. and Development, 2000-1877 (La.App. 4 Cir. 9/26/01), 799 So.2d 569.
We find that the record furnishes a reasonable factual basis to support the trial court’s findings and accordingly, we will not disturb those findings. Our review of the evidence convinces us that there were *455 no exceptional circumstances that would warrant the imposition of sanctions pursuant to La.C.C.P. Art. 863.
In Watts’ second assignment of error, he requests that this court conduct a de novo review of the trial court’s judgment because the judgment is based on an erroneous application of the law. Watts complains the trial court mistakenly retried the petitory action and based its decision not to impose sanctions on the siblings’ testimony regarding familial relationships and the literacy of the decedent. A review of the record below shows that the trial court considered the case as presented by counsel for Watts. Watts’ counsel requested and received wide latitude to inquire into the siblings’ conduct not only at the time the pleadings |7were filed and verified, but also after the filing of the pleadings and rendition of the judgment on the petitory action. Watts’ counsel specifically questioned the defendants regarding familial relationships and the decedent’s literacy. Watts suggests that the trial court should not have based its decision on that testimony because similar testimony was found to be insufficient in the petitory action. However, the trial court is not empowered to impose sanctions under La. C.C.P. Art. 863 merely because a party did not prevail on the merits. The failure to prevail does not automatically trigger an award of sanctions. Curole, p. 5 (La.App. 4 Cir. 10/17/01), 798 So.2d at 322.
The manifest error or clearly wrong standard applies to our review of the trial court’s decision to impose sanctions. See Fauria v. Dwyer, 2002-2320, 2002-2418, p. 7 (La.App. 4 Cir. 9/24/03), 857 So.2d 1138, 1144. Generally speaking, the trial court has great discretion in deciding whether to impose sanctions; and its determination to impose sanctions will not be reversed unless it is manifestly erroneous or clearly wrong. Bonilla v. Commodore Cruise Lines Ltd., 2002-2182, pp. 6-7 (La.App. 4 Cir. 4/2/03), 844 So.2d 1025, 1029.
In this case, the record below contains sufficient evidence to support the trial court’s decision. The judgment was not clearly wrong or manifestly erroneous. Accordingly, ade novo review of the trial court’s judgment is not warranted.
Watts’ third assignment of error questions whether Mr. Bell’s testimony and exhibits introduced in connection therewith should have been proffered.
Mr. Bell argued that as an attorney, the law required opposing counsel to make an effort to elicit his testimony through less invasive measures, such as written interrogatories. Mr. Bell’s argument is supported by the Supreme Court’s decision in Levy v. Maloney, 95-0333 (La.3/24/95), 652 So.2d 522. That decision |sfound that discovery of information held by an attorney and related to his or her practice must be conducted with recognition that such material is available only under exceptional circumstances and only where the information sought cannot be obtained through other means. Such information often consists of confidential and/or privileged material affecting not only the attorney, but also are of great concern to that attorney’s clients. Id., p. 2, 652 So.2d at 522. In Levy, as in the case at bar, the attorney was also a party to the lawsuit. The Court suggested that the party should first seek the requested information through interrogatories and requests for admissions. Id., p. 3, 652 So.2d at 523.
In the present matter, counsel for Watts did not seek Mr. Bell’s testimony through less invasive measures. Additionally, the record reveals that the information sought from Mr. Bell was available through other means, namely, the testimony of the sib *456 lings who testified at trial. Therefore, the trial court’s decision to allow only a proffer of Mr. Bell’s testimony was proper.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.