STATE OF LOUISIANA
v.
DAVID FEZELL STUBBS
No. 08-691
Court of Appeals of Louisiana, Third Circuit.
February 11, 2009.
NOT FOR PUBLICATION
JAMES C. DOWNS, District Attorney, LOREN M. LAMPERT, Assistant District Attorney, Counsel for Appellee, State of Louisiana.
G. PAUL MARX, Louisiana Appellate Project, Counsel for Defendant-Appellant, David Fezell Stubbs.
Court composed of COOKS, SAUNDERS and PETERS, Judges.
COOKS, Judge.
Defendant, David Fezell Stubbs, was convicted of second degree murder, in violation of La.R.S. 14:30.1, and illegal possession of a firearm by a convicted felon, in violation of La.R.S. 14:95.1. A jury found Defendant guilty as charged on each offense. On the second degree murder charge, Defendant was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. For the charge of possession of a firearm by a felon, he was sentenced to 15 years at hard labor to run consecutively to his life sentence for second degree murder and to be served without benefit of probation, parole or suspension of sentence. Defendant timely filed an appeal, in which he alleges ineffective assistance of counsel. After initial review, this court requested supplementation of the record with transcripts from hearings held on a motion to suppress and two pro se motions for appointment of new counsel. Defendant also filed a supplemental brief asserting an additional assignment of error.

FACTS
On October 9, 2006, Defendant flagged down an officer patrolling in his neighborhood and told the officer that he saw a body lying in the grass by a levee. The officer approached the body and discovered that the victim was still alive. After emergency transport to the hospital, the body was identified as David Ivy. Mr. Ivy died shortly after his arrival at the hospital from a gunshot in the face located between the eye and the ear.
At the time of the murder, Defendant worked as a "handyman" for Richard Jones, the owner of a nightclub located near Defendant's home. Jones testified about two weeks before the murder, he loaned the Defendant a single-shot .22 rifle for the purpose of squirrel hunting. Once the murder investigation began, Defendant was taken into custody where he gave a tape-recorded statement. In this statement, Defendant admitted to shooting Mr. Ivy and told the officers where the murder weapon was located. It was later determined that the bullet retrieved from the victim's head was fired from the same gun Jones loaned to Defendant.
While incarcerated at the parish jail, Defendant had a phone conversation with Jones and again admitted to shooting Mr. Ivy. This conversation was also recorded and was introduced into evidence at trial. Additionally, Jones was called as a State's witness to testify about this conversation and about certain events that transpired on the morning of the murder.
Jones testified that on the morning of the incident, Defendant called him about 5:00 a.m. and told him that prowlers were trying to break into his club. When Jones met Defendant at his club he saw evidence of an attempted break-in and called the police. Jones testified before the police arrived, Defendant told him he saw two men trying to break into the club and he and another unidentified individual chased the two men. According to Jones, Defendant stated one of the burglars "gave up his wallet" and then Defendant gave the wallet to Jones. When the police arrived, Jones handed the wallet to Officer Powell, the investigating officer. The wallet belonged to David Ivy. According to Officer Powell's report, Jones stated he saw two white males at the club and he found the wallet on the ground outside of the club. The discrepancy between Jones's testimony at trial and his statement to Officer Powell is at the center of Defendant's appeal.

ASSIGNMENT OF ERROR NO. 1
Defendant contends ineffective assistance of counsel and sets forth two grounds in support of this contention. First, Defendant argues his trial counsel "surrendered" his Sixth Amendment right to cross-examine a state witness when counsel failed to question Richard Jones on cross. Second, Defendant argues he was denied effective counsel on appeal because "material hearings were not transcribed due to the limited designation of the record filed by trial counsel."
A claim of ineffectiveness is generally relegated to post-conviction, unless the record permits definitive resolution on appeal. However, when the record is sufficient for review, this Court will reach the merits of complaints about counsel's performance and grant relief when appropriate.
State v. Stringer, 06-800, pp. 20-21 (La.App. 3 Cir. 12/6/06), 949 So.2d 464, 479, writ denied, 07-0004 (La. 9/14/07), 963 So.2d 996. (citations omitted).
Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984), a relator must show that his counsel's performance was deficient and that the deficient performance prejudiced him. With regard to counsel's performance, the relator must show that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. Astroprejudice, there at or must show that counsel `serrors were so serious as to deprive there at or of a fair trial, i.e. a trial whose result is reliable. Id., 466 U.S. at 687, 104 S.Ct. at 2064. Both showings must be made before it can be found that relator's conviction resulted from a breakdown in the adversarial process that rendered the trial result unreliable. Id. If an alleged error falls within the ambit of trial strategy, it does not establish ineffective assistance of counsel. State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir.1986).
State v. Biagas, 99-2652 (La.App. 4 Cir. 2/16/00), 754 So.2d 1111, 1113-14, writ denied, 00-785 (La. 10/27/00), 772 So.2d 120.
On the morning of October 9, 2008, Richard Jones reported an attempted burglary at his nightclub. When Officer Powell arrived in response to his complaint, Jones told the officer that he saw two white males in the area of his club and that he found a wallet in the yard of the club; Jones gave the wallet to the officer. As noted, the wallet belonged to David Ivy.
The next day, Jones gave a second statement to Officer Cooper. In this statement, Jones said he acquired the victim's wallet from Defendant. At trial, Jones was called as a State's witness and testified he did not find the wallet himself, but Defendant gave him the victim's wallet. Jones's testimony on direct was inconsistent with the statement he gave to Officer Powell on the day of the murder.
When the State tendered Jones for cross-examination, defense counsel replied, "I would like to withhold any cross examination and recall Mr. Jones at a later time." Although Jones was recalled by the defense on direct, Defendant contends because he was not subjected to cross-examination "Jones was never challenged on culpability [or credibility] in this case." As such, Defendant claims he was deprived of effective representation.
In response, the State argues defense counsel was aware of Jones's inconsistent statements prior to trial. The State points out defense counsel had, in advance of trial, a copy of the initial statement given to Officer Powell and a copy of the statement given to Officer Cooper. Thus, the State argues defense counsel "made a strategic decision to first question Officer Powell about the inconsistency between the police report and Richard Jones' direct testimony when he deferred cross-examination of Jones."
In State v. Everett, 530 So.2d 615 (La.App. 3 Cir 1988), writ denied, 536 So.2d 1233 (La.1989), the court addressed this particular issue and made the following comments:
Appellant also alleges ineffective assistance for defense counsel's failure "to cross-examine material witnesses to the crime." Appellant contends the investigating officers should have been questioned about the number of persons in the vicinity during the arrest, their criminal propensities, the history of criminal activity in the area and the distance the victim was found from the automobile. Apparently, appellant is suggesting that indepth questioning along these lines would have led the jury to conclude that the shooting was the exercise of reasonable force under the circumstances.
The record in the instant case establishes that the defense attorney did, in fact, convey this theory to the jury in his opening statement and through effective cross-examination of other witnesses. The extent of the trial counsel's cross-examination appears to meet the level of competency normally demanded of attorneys in criminal trial. It should be emphasized that appellant was tried for attempted second degree murder for shooting the victim three times with a powerful handgun. Appellant was found guilty of a lesser included offense, substantially abating potential penal liability. Defendant has not established prejudice under the facts of this case, nor has the defendant established that his trial counsel was ineffective.
This assignment of error has no merit.
Id. at 625.
In this case, Defendant suggests if his counsel had pressed Jones on cross about his prior inconsistent statement, it would have led the jury to conclude Jones was responsible for the shooting. To the contrary, the record indicates defense counsel presented this theory. On cross-examination of Officer Powell, the defense clearly established Jones told the officer he found the victim's wallet and that he saw two males on his property. Additionally, Defendant testified Jones told Officer Powell that "some of his biker buddies had came by and seen the guy and that they ran him...somewhere on Rapides by the levee." Defendant also stated Jones "came out of his left back pocket" and gave the officer the victim's wallet. Furthermore, defense counsel made the following comments in his closing argument:
The wallet  what the wallet does, is tie Coco Moe, otherwise known as Richard Jones, to Ivy. Because either he committed some heavy-duty perjury here today, or  I should say  well, whenever, or Officer Powell would be fired for gross incompetence for being unable to take a simple statement. Hey, I don't know, you make the choice.
Is Officer Powell so incompetent that he cannot take a simple statement  he cannot make the distinction between, I picked the wallet off the  off the property after some white guys were seen in the area, and here  here's the wallet. Or we can have this  this grand scenario, a phantom black guy is chasing people down and bringing back the wallet, and giving it to Mr. Stubbs, who then gives it to Coco Moe, who then gives it to Officer Powell. Now, which scenario do you like, A or B?
If we tied in that, and we tied in Katrisa Williams recanting her earlier testimony, that puts the gun in Coco Moe's hands somewhere around 2:00, not in David Stubbs'.
Accordingly, counsel's decision to not question Jones on cross was a tactical or strategic decision, not ineffectiveness. In addition, "[c]ounsel's errors can be held non-prejudicial for Strickland purposes when the State has presented a strong case." State v. Duplichan, 06-852 (La.App. 3 Cir. 12/6/06), 945 So.2d 170, writ denied, 07-148 (La. 9/28/07), 964 So.2d 351. Here, the State presented overwhelming evidence that Defendant shot and killed the victim. The record shows Defendant gave multiple confessions to the police and lay witnesses; told investigating officers the specific location of the murder weapon  in his mother's closet; and admitted in his own testimony to having possession of the weapon before and after the murder.
As his second contention, Defendant argues his trial counsel was ineffective because his motion to designate the record for appeal did not include transcripts from the hearing on the motion to suppress and his two requests for new counsel. In response to this contention, we ordered these transcripts from the clerk of court and permitted the Defendant to submit a supplemental brief, which was filed on November 19, 2008. Thus, this particular argument is moot.

SUPPLEMENTAL ASSIGNMENT OF ERROR
In his supplemental brief, the Defendant asserts the following contention:
The trial court erred in not granting a meaningful hearing to the Defendant on his pre-trial complaints regarding communication with counsel, and further compounded that error by providing that the district attorney could participate in such hearing.
Defendant's complaint derives from the two hearings held on the motions for new counsel. The first hearing was held on March 9, 2007. The second hearing was held on November 13, 2007. At both hearings, the trial court permitted the district attorney to remain in the court room and even allowed him to participate in the hearing held on November 13. The trial judge denied the Defendant's pro se motions on both occasions.
At the hearing held on March 9, 2007, the trial judge addressed Defendant's motion for new counsel and gave Defendant an opportunity to state his reasons for requesting a new attorney. The following discussion occurred between the Defendant, defense counsel, and the district attorney:
BY MR. STUBBS:
As far as when I was locked up and I was in Marksville, I didn't know who my lawyer and them was. I didn't hardly see him to discuss my case.
BY THE COURT:
Okay. You know who your lawyer is now, right?
BY MR. STUBBS:
I met him about two weeks ago.
BY THE COURT:
Okay. So, now you know. Why else do you need a new attorney? You didn't know who your attorney was 
BY MR. STUBBS:
I didn't know what was going on with my case or nothing.
BY THE COURT:
All right. So, what's the other reason?
BY MR. STUBBS:
I didn't even know what was going on with my case and all that, though.
....
BY MR. LAMPERT:
Judge, for the record, Mr. Kutch has already filed Motions for Preliminary exams 
BY THE COURT:
Okay. And, Mr. Kutch got a copy of the file, so that shows he's a little more diligent than most attorneys. And he's filed what motions?
BY MR. LAMPERT:
I know he filed a Motion for Preliminary exam, and Motion to Set a Bond.
BY MR. KUTCH:
I've filed a P E Bond reduction that was heard on January 29th, actually, was a PE and a setting of bond, because I understood he had no bond, but he had one set. I had previously filed a 701 Motion. I first communicated with Mr. Stubbs in November, after I had gone up to the jail here, and he wasn't here and the jail didn't know where he was. So, I finally found out that he was in Avoyelles. I wrote him a letter advising of my representation, and I asked Mr. Frank Otello (phonetic) to go see him, which he did on November 14th and got a state [sic] statement. November 16th, I spoke to Mr. Stubbs by telephone that his mother, Liola had set up. I spoke to Mr. Stubbs, approximately, an hour and a half on the 19th of February in the jail, after I got a copy of the file which I had  that I had viewed what Mr. Otello had told me that  seem to me, a better use of my time to have the file. I asked Mr. Lampert for it, received the file, discussed the case with him.
Another one of Mr. Stubbs complaints was that he didn't have  he had a grand jury. I wrote to him on the 30th of January, that was after our conversation in the back, during the P E, January 30th, discussed the grand jury, recommended that he do [sic] not testify. I was up here, and I did get a copy of the bill. I was not allowed inside, because Mr. Stubbs was not testifying.
I saw him on the 19th, we touched briefly no [sic] the grand jury. I believe I again said  all he could do is hurt himself by going to the grand jury. And, under the circumstances, if he had any questions, he had every opportunity to ask them at that point. This motion was filed, apparently, on the 22nd, which was four days after we talked.
BY THE COURT:
All right. Mr. Stubbs, do you have anything you wish to respond to what Mr. Kutch said?
BY MR. STUBBS:
No.
BY THE COURT:
All right. Then, I'm going to deny your motion at this time. You're set for a pre-trial on March 28th, did you say?
At the hearing held on November 13, 2007, which was the first day of trial, defense counsel presented the trial judge with a letter from Defendant requesting the appointment of new counsel. In this letter, Defendant alleged defense counsel "has never once discussed trial with me, strategy, witness testimony, or the weight of any evidence. Worse, he represents the daughter of the victim the prosecution accuses me of killing and has discussed my case with her." Defense counsel informed the court he had not shared the letter with the district attorney because it pertained to attorney/client information and requested the district attorney be excluded from any hearing that may be held on the matter. The trial judge denied this request, stating "No. The District Attorney needs to be present." Defense counsel then noted his objection for the record and the discussion continued, as follows:
BY THE COURT:
He wants me to appoint another attorney. I'm not going to do that. Today is the trial. He was charged  we've already had one motion on this before.
BY MR. KUTCH:
That's correct.
BY THE COURT:
And, I've already heard that. He's been charged since October of '06, this is now November of '07, and he's alleged that you haven't done anything in his case. Would you respond to his complaints about your representation.
....
BY MR. LAMPERT:
I was going to  I mean, I might be able to help out, and I don't have a dog in this fight. I can just tell you, that since the indictment, Mr. Kutch and my office have been in constant contact, and on many occasions, Mr. Kutch and I discussed this case exclusively, with regards to the potential for plea and further investigation, as well as various motions that Mr. Kutch filed, as well as original discovery motions and supplemental discoveries. So, I mean, I couldn't tell you we personally met more than twenty times, but I can say at least more than five or six times Mr. Kutch and I have met. And, more than just a cursory passing on this particular case over the last year.
BY THE COURT:
Mr. Kutch, I also see that you've filed a Motion for Informal Discovery, which is the policy in this JDC. Normally, the State will give a copy of whatever they have to the defendant to satisfy any discovery request. You received 
BY MR. KUTCH:
I received full discovery. I discussed prior to the Grand Jury Indictment, with Mr. Stubbs. I have been on the phone with him several times. Mr. Cortello has been with him. Mr. Cecil Baun, to the best of my knowledge has been with him more than a dozen times in the last two months. In fact, I think it would be fair to say, outside of the 230.1, if you read the matters, Mr. Yost has been on this case for almost full time. He has gone to Avoyelles Parish on  how many occasions? Two occasions. I know I tried to locate a fellow named Coca Moe, without any success and the same with Mr. Yost. I have attempted to run down two of the important female witnesses, one was even  Mr. Yost was unable to find until she was here this morning. He has interviewed other than  well, Coca Moe is his street name. His name is Mr. Jones. We have not been able to  not able to  either one of us are able to find him. And, I'm not sure  I think he was here yesterday and a subpoena was issued or given to him; is that correct?
....
BY MR. KUTCH:
If Mr. Stubbs wishes to say anything, that's 
BY THE COURT:
Mr. Stubbs, you wish to say anything, sir?
BY MR. KUTCH:
I would add that the Court admonish him that anything he does say could  since it's done in the presence of the District Attorney.
BY THE COURT:
Mr. Stubbs, do you have anything you wish to say, sir?
BY MR. STUBBS:
(Nods head).
BY THE COURT:
All right. He shook his head, no.
BY THE COURT:
Then we're not going to appoint a new attorney. We're not going to do that, it's not appropriate. One thing, it's the day of the trial, and secondly, Mr. Kutch is prepared. And, so, he's prepared and ready to present his evidence, so we're going to be in recess until 1:00. If y'all would try to be back at 1:00.

MATTER CONCLUDED
Initially, Defendant argues the trial court did not provide a "reasonable method" for determining counsel's effectiveness. To the contrary, the supplemental record reveals Defendant was given an opportunity to express his complaints to the trial court. Instead, he listened to defense counsel advise the court regarding the amount of communication that took place between them without ever expressing any disagreement. Thus, Defendant is incorrect in his assertion that the trial judge failed to give him a "meaningful" hearing.
The second contention set forth in Defendant's supplemental brief alleges the trial court erred in its failure to exclude the district attorney from the hearings regarding his pro se motion for the appointment of new counsel. Defendant contended the court should have granted him an ex parte hearing because the nature of his complaint was based on the attorney-client relationship and the State had no legitimate interest in the proceedings. In support of this contention, Defendant cited State v. Bridgewater, 00-1529 (La. 1/15/02), 823 So.2d 877, 888, for the proposition that "[c]ourts routinely use ex parte proceedings, including situations where counsel provokes a hearing on a motion to withdraw due to `irreconcilable conflict.'"
In opposition, the State contends "there is nothing in the original or supplemental record to suggest that there was any type of irreconcilable conflict or failure of representation by appointed counsel which would rise to the level of a constitutional violation." Accordingly, the State argues although Defendant "has the constitutional right to be represented by appointed counsel," he is not entitled to have "counsel of his particular choice. . . absent a material or serious ground for discharging appointed counsel," relying on State v. Willie, 595 So.2d 1149 (La. 1992) cert. denied, 506 U.S. 880, 113 S.Ct. 231 (1992), and State v. Fussell, 06-324 (La.App. 3d Cir. 9/27/06), 941 So.2d 109, rev'd on other grounds, 06-2595 (La. 1/16/08), 974 So.2d 1223. Further, the State points out Bridgewater is not authority for the proposition that in "every case in which an indigent wishes to complain about his appointed counsel, the trial court must . . . grant an ex parte hearing."
The State is correct in its assertion regarding Bridgewater. The use of ex parte proceedings was not an issue before the court in Bridgewater. In particular, a review of Bridgewater reveals the occurrence of the ex parte hearing that Defendant refers to was merely a fact included in the procedural background of the opinion. See Bridgewater, 823 So.2d at 888. The real issue before the court in Bridgewater related to the district court's denial of trial counsel's "motion to withdraw `based on irreconcilable conflicts' between [himself] and Mr. Bridgewater." Id. at 888-89. The Bridgewater court's comment regarding the use of an ex parte hearing is made in a reference to the trial court's action, as follows:
Defendant claims that the trial court erred in denying his attorney's motion to withdraw four days before trial "based on irreconcilable conflicts between [himself] and Mr. Bridgewater." At a pre-trial, ex parte, sealed hearing, defense counsel clarified that the conflict arose out of defendant's wish to present a defense of total innocence and counsel's recommendation that defendant admit to second degree murder and argue that the requisite specific intent needed to prove first degree murder was lacking.
As a general proposition, a criminal defendant has the right to counsel of his choice. State v. Leggett, 363 So.2d 434, 436 (La.1978); State v. Mackie, 352 So.2d 1297, 1300 (La.1977); State v. Anthony, 347 So.2d 483, 487 (La.1977). This right, however, is the flip-side of the right to self-representation. Like self-representation, this right cannot be manipulated to obstruct orderly court procedure or to interfere with the fair administration of justice. "Defendant must exercise his right to counsel of his choice at a reasonable time, in a reasonable manner and at an appropriate stage of the proceedings." State v. Seiss, 428 So.2d 444, 447 (La.1983). Absent a justifiable basis, "[t]here is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications." State v. Leggett, 363 So.2d at 436. A trial court's ruling on this issue will not be disturbed in the absence of a clear showing of abuse of discretion. State v. Cousin, 307 So.2d 326, 328 (La.1975).
In the instant case, defendant voiced the same strategic conflict with prior counsel, Armato, as he had with his trial counsel, Dohre. Given that this was (as the state suggests) becoming a "pattern," that defendant had already gone through two other attorneys, and that this capital murder trial was scheduled to begin in just four days, we cannot say that the trial court abused its discretion by denying defense counsel's motion to withdraw.
Id. at 888-89.
After a review of the record, we find Defendant's pre-trial motion for new counsel was based upon allegations that trial counsel failed to communicate with Defendant, and that he did not trust trial counsel because he was also representing the daughter of the victim in a separate matter. These allegations do not involve a strategic or irreconcilable conflict nor do they present the type of privileged information that should be addressed in an ex parte hearing.[1] Additionally, we note Defendant's second motion was filed on the day of trial. Thus, in light of Bridgewater, the trial court did not abuse its discretion in denying the Defendant's motion for appointment of new counsel.

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. We have found no errors patent, but find the minutes of sentencing are in need of correction.
The court minutes of sentencing indicate Defendant's sentences are to run concurrently. Specifically, the court minutes state in pertinent part:
Court sentenced accused for MURDER 2. Court orders the accused to serve LIFE at the Louisiana Department of Corrections. To run concurrent. . . . Court sentenced accused for FIREARM POSS. BY FELON. Court sentenced accused to be committed to the Louisiana Department of Corrections. Accused to serve 015 Year(s). Sentence is to be served at Hard Labor. Sentence is to run concurrent.
However, the transcript of sentencing indicates the judge ordered the 15-year sentence to run consecutively to the life sentence on the murder case. "[I]t is well settled that when the minutes and the transcript conflict, the transcript prevails." State v. Wommack, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, writ denied, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, the district court is instructed to amend the minutes of sentencing to reflect Defendant's fifteen year sentence for possession of a firearm by a convicted felon is to run consecutively to his life sentence for second degree murder.

DECREE
For the foregoing reasons, Defendant's conviction and sentence are affirmed. The district court is instructed to amend the minutes of sentencing to reflect that Defendant's fifteen year sentence for possession of a firearm by a convicted felon is to run consecutively to his life sentence for second degree murder.
AFFIRMED.
NOTES
[1] For example, the court in Succession of Smith Watts, 04-1152, p. 8 (La.App. 4 Cir. 3/23/05) 901 So.2d 450, 455, writ denied, 05-1039 (La. 6/3/05) 903 So.2d 460, observed that discovery of information held by an attorney and related to his or her practice must be conducted with recognition that such material is available only under exceptional circumstances and only where the information sought cannot be obtained through other means. Such information often consists of confidential and/or privileged material affecting not only the attorney, but also are of great concern to that attorney's clients. Citing, Levy v. Maloney, 95-333, p. 2 (La. 3/24/95), 652 So.2d 522.