632 So.2d 302 (1993)
Sherril Herman, Wife of Ralph ZATZKIS
v.
Ralph ZATZKIS.
No. 93-CA-0447.
Court of Appeal of Louisiana, Fourth Circuit.
December 16, 1993.
Rehearing Denied March 17, 1994.
*303 Lanny R. Zatzkis, Karen D. McCarthy, Deborah M. Sulzer, Zatzkis & Associates, New Orleans, for appellant.
Walter C. Thompson, Jr., Barkley & Thompson, New Orleans, and Avram C. Herman, Arthur A. Steiner, Metairie, and Warren A. Goldstein, New Orleans, for appellee.
Before BARRY, BYRNES and LOBRANO, JJ.
BYRNES, Judge.
This is one of six related appeals (four of which were consolidated) in a divorce case in which issues of child support and alimony have been the subject of painfully protracted and bitter litigation.
In this appeal Ralph Zatzkis appealed the judgments of the trial court rendered on November 9, 1992 and December 23, 1992. However, the judgments cannot be understood without reference to another judgment dated July 14, 1992 which is the subject of appeal No. 92-CA-2637.
The issue which overshadows all others is the award in the November 9, 1992 judgment of $8,700 in attorney's fees to Sherril Herman Zatzkis for which Ralph Zatzkis and his attorneys Lanny Zatzkis and Karen McCarthy were "jointly, severally and solidarily cast in judgment" for "falsely back-dating Exhibit 10."
"Exhibit 10" was an engagement letter addressed to Ralph Zatzkis by his attorney and brother, Lanny Zatzkis, stating that Lanny's firm would charge $150.00 per hour but "because of our computer accounting limitations, your bills will indicate fees of $75.00 per hour ...". The letter was signed by both Lanny and Ralph. It was dated April 25, 1990 but was not produced until the hearing on May 29, 1992, in spite of prior discovery requests covering Ralph's debts and attorney's fees.
*304 At that time Sherril's attorney, Mr. Goldstein, protested vehemently that the letter should not be accepted into evidence as it had never been produced in response to previous discovery requests. It was only several days later when Mr. Goldstein went back through his files and discovered from previous correspondence that the letterhead on which Exhibit 10 was written was not in existence on April 25, 1990 that he realized that the letter might represent an attempt to perpetrate a fraud upon Sherril and upon the Court. Under the circumstances Ralph and Lanny could not deny the letter was backdated.
Elementary standards of candor would have required that Ralph and/or his attorneys admit that Exhibit 10 was backdated when Mr. Goldstein first objected to its admissibility. The transcript of the May 29, 1992 hearing reflects that Mr. Goldstein was agitated and animated in making his objections. In spite of the furor surrounding the introduction of Exhibit 10, Ralph and his attorneys failed to acknowledge that it was backdated. Exhibit 10 became a focal point and subject for argument. It was not just one exhibit among many that could arguably have been lost in the shuffle. There was no justification for the failure to disclose that the letter was backdated. But it was only when the backdating could no longer be denied that Ralph and his attorneys commenced the series of excuses that continue on this appeal. Far from persuading this court or the trial court that there was a legitimate reason for backdating the letter, the excuses have the opposite effect of reinforcing the bad faith surrounding the issue.
The record contains a transcript of a status conference before Judge Okla Jones on June 3, 1992 in which Mr. Goldstein first hints that there are questions of misrepresentation in connection with Exhibit 10. This was the second opportunity afforded to Ralph to explain why Exhibit 10 was backdated. Instead Ralph's attorney recited technical procedural objections to Mr. Goldstein's efforts to raise the issue. The failure to be candid with Sherril and the court a second time reinforces the deliberate bad faith.
Ralph and his attorneys contend that the letter represents only a written memorialization of what had always been the oral fee arrangement between Ralph and his brother Lanny. They acknowledge that it, perhaps, should have included the additional words "effective date", but that the court should not attach significance to this omission. They argue that the court should not ascribe bad faith and fraud to the failure to disclose the fact that the letter was backdated.
Ralph and his attorneys have presented an unconvincing series of excuses that both the trial court and this court find unpersuasive:
1. Mr. Goldstein didn't ask if the letter were backdated when it was produced in court.
The date on the letter was a material issue and we find that there was an affirmative duty to disclose whether asked or not.
2. Ralph and his attorneys should not have the burden of trying Sherril's case for her.
This is another variation of the previous argument.
3. This was the only way that the Zatzkis' computer could handle the billing of a pay one-half now and one-half later arrangement.
We agree with the trial court's finding that "this rationalization is dubious on several counts ..." In addition to the incongruities in Lanny Zatzkis' testimony referred to by the lower court in Reasons for Judgment dated November 9, 1992, this court does not believe any more than did the trial court that the Zatzkis firm's billing system could not have billed Ralph the full $150.00 per hour billing if that had been the true agreement, but have then accepted partial payments on account. As payment in full of all bills by all clients would be rare, no one would design computer software that could accept only payment in full.
It is obvious that the trial judge carefully considered all of the evidence and arguments of the Zatzkises and Ms. McCarthy in this case, but nonetheless "... determine[d] that Mr. Zatzkis and his attorney willfully failed to disclose the back-dating of Defendant's *305 Exhibit 10 to the court and opposing counsel..."
The trial court further found that "... [Zatzkis] and his counsels' actions were deceitful, fraudulent, and purposely motivated to gain an unfair advantage in this litigation...".
The parties argued extensively about the standard of review we should apply to such findings of the trial court. We have examined the record using both the manifest error standard and de novo review and find no error in the findings of fact of the trial court regarding the actions and motives of Ralph and his attorneys surrounding Exhibit 10.
The trial court characterized the explanations used to explain the lack of candor surrounding Exhibit 10 as "rationalizations." The record supports this finding.
In reasons for judgment dated July 14, 1992 the trial court stated:
Here it is uncontroverted that Mr. Zatzkis and his counsel were put on notice as to their alleged bad faith actions. However, no request for or testimony was offered at the hearing in support of specific sanctionsother than exclusion of the exhibitand attorney's fees now raised. Thus, it cannot be truly said that Ralph Zatzkis and his counsel were fully aware of what sanctions were under consideration and the nature of those sanctions. Davis v. Veslan Enterprises, 765 F.2d 494, 500 and n. 12 (5th Cir.1985).
Applying these principles to the instant matter, this court reluctantly denies the requested sanctions or attorney's fees out of an abundance of caution in an effort to resolve this matter equitably. Any future sanctions will only be considered after defendant and his counsel have been specifically noticed as to the nature and type of sanctions sought and as to whether counsel, client or both are the target of the proposed sanctions. Only under these conditions the court feels that it would be assisted in any consideration of the issues of sanctionability and that the alleged offender would be adequately prepared as to his or her defense. See generally, INVST Fin. Group, Inc. v. Chem. Nuclear Sys., 815 F.2d 391, 405 (6th Cir.1987), cert. denied [484 U.S. 927], 108 S.Ct. 291 [98 L.Ed.2d 251] (1987).
Pursuant to these findings on September 15, 1992, Sherril brought a Rule for Article 863 Sanctions and to Impose Taxable Costs which Ralph opposed with an Exception of Res Judicata, based on the above quoted reasons for the judgment of July 14, 1992, which exception he raises on this appeal.
In denying Ralph's exception of res judicata the trial court stated that it had "... assiduously refused to delve into Article 863 sanctions on this issue ..." when rendering the judgment of July 14, 1992. We agree with the trial court that the issue was, therefore, never litigated and there is no basis for the exception.
The court explained that in its reasons for judgment of July 14, 1992 quoted above that it reserved to Sherril the right to raise the issue of sanctions in a subsequent proceeding.
This court finds no errors in the actions or findings of fact and law on this issue, with the exception of the trial court's reliance upon LSA-C.C.P. art. 863 for sanctions and attorney's fees.
LSA-C.C.P. art. 863 refers only to pleadings. Although it is common for attorneys to refer to discovery requests as pleadings[1], LSA-C.C.P. art. 852 limits pleadings to "... petitions, exceptions, written motions, and answers."
Exhibit 10 technically does not fall into any of the above categories of "pleadings" under even the most liberal of interpretations. However, as Exhibit 10 and the information contained therein was covered by Sherril's discovery requests it does fall within the purview of LSA-C.C.P. art. 1420. The purpose and language of LSA-C.C.P. art. 863 and 1420 are virtually identical with the exception that the former deals with pleadings and the latter with discovery. Paragraphs "D" and "E" of LSA-C.C.P. art. 1420 concerning *306 sanctions and paragraphs "D" and "E" of LSA-C.C.P. art. 863 are identical. The evidentiary standards and procedural and notice requirements of the two articles are identical. We find that the trial court fully adhered to those standards and requirements, e.g., the trial court refused to consider sanctions in the first hearing in which Sherril attempted to raise the issue, insisting that the issue could only be raised at a subsequent hearing after all technical notice requirements were met. Therefore, this Court finds that the trial court's reference to LSA-C.C.P. art. 863 instead of article 1420 was harmless error. Cf. Murphy v. Boeing Petroleum Services, 600 So.2d 823 (La.App. 3 Cir.1992) wherein the court treated articles 863 and 1420 as in pari materia and virtually interchangeable. The trial court demonstrated that it fully considered and appreciated that this was a discovery issue when it specifically referred to "... defendant's failure to previously produce this document in response to prior discovery requests and subpoena by plaintiff." To remand this issue to the trial court for a hearing under article 1420 would afford Ralph no notice, or other advantages he did not receive at the hearing on September 15, 1992 and would serve no useful purpose. The effect of the failure to disclose that Exhibit 10 was backdated is the same under either article.
To argue that Sherril's request for production of documents in December of 1990 which encompassed the subject matter contained in Exhibit 10 cannot apply because Exhibit 10 was not in existence at that time is disingenuous. This court will not allow discovery, and importantly, discovery sanctions to be defeated by tolerating the use of backdated documents which were not in existence at the time they purported to be.
This court finds that the trial court's award of $8,700 in attorney's fees to Sherril as sanctions against Ralph and his attorneys was an amount well within the broad discretion of the trial court and is adequately supported by the record. This court finds that Sherril is entitled to an additional $6,000 in attorney's fees for this appeal as well as all costs because of the onerous nature of these proceedings; the efforts to complicate, confuse, and obfuscate the issues; the gravity of the discovery transgression; and the remorseless intransigence of Ralph and his attorneys in their persistent efforts to justify the unjustifiable.
Hampton v. Greenfield, 618 So.2d 859 (La. 1993), is distinguishable. In that case the Supreme Court reversed an award by this Court under LSA-C.C.P. art. 863 stating that:
Only a trial court is capable of holding the required art. 863 hearing where evidence may be presented on the sanctions issue. Hampton at p. 862.
In the Hampton case there was no article 863 hearing in the trial court. The question of sanctions was considered for the first time in the court of appeal.
In the instant case there was a full sanctions hearing in the trial court which the parties have presented on appeal. The appropriateness of sanctions was decided by the trial court and we have affirmed that finding. In Hampton the Supreme Court stated at 618 So.2d 859, 862 that "... it was improper for the court of appeal to look beyond the appeal filed in that court."
Here we have an appeal on the issue of sanctions. Article 1420 empowers this court to award sanctions commensurate with the appeal before us based on the findings of the trial court as amplified by the actions of the parties in this court. It would subvert the value of the trial court award if this court could only award incremental attorney's fees where appeals of articles 863 and 1420 sanctions were found to be frivolous. As appeals are favored in this state it would be very rare that an appellee could convince this Court that such an appeal was frivolous. That is not an adequate remedy where the trial court had already determined that sanctions in the form of attorney's fees are warranted, nor does it appear that is the remedy the legislature intended for someone in Sherril Zatzkis' position. We are convinced that neither the legislature in writing articles 863 and 1420, nor the Supreme Court in deciding the Hampton case intended to prevent this Court or the Supreme Court from dealing with sanctions under articles 863 and 1420.
*307 The sanctions which we have affirmed together with the additional sanctions which we have provided are adequate. Sherril's request that we dismiss all of Ralph's appeals, while maintaining Sherril's cross appeals, is denied.
This court finds no error in the trial court's judgment in favor of Sherril for all costs and expert fees.
The award by the trial court of $12,000 to Sherril as additional attorney's fees and costs pursuant to LSA-R.S. 9:375 A in the judgment of December 23, 1992 was not error. We agree with the trial court who relied on Newson v. Newson, 176 La. 699, 146 So. 473 (La.1933), and Gardner v. Gardner, 366 So.2d 1022, (La.App. 1 Cir.1978):
"The alimony allowed should not be eaten up partially by attorney's fees and the child thereby deprived, in part, of the object and purpose of allowing it ..." Id. at 1024.
In its reasons for judgment the trial court provided an excellent litany and narrative of the procedural odyssey to which Sherril was subjected in her efforts to collect support which had been awarded. The record and reasons given by the trial court justify the award, as well as the refusal to award more. Based upon the same reasoning this Court awards Sherril $4,000 in attorney's fees in connection with this appeal of the judgment of December 23, 1992.
The judgment of December 23, 1992 was not an amendment of the judgment of July 14, 1992, substantive or otherwise. The December judgment did not increase the $10,000 awarded in July to $22,000. The December judgment awarded an additional but separate $12,000 based upon a separate and subsequent hearing held on November 10, 1992 concerning litigation efforts exerted subsequent to the period covered by the judgment of July 14, 1992.

DECREE
For the foregoing reasons the awards in favor of Sherril Zatzkis of sanctions in the sum of $8,700 contained in the judgment of November 9, 1992 and attorney's fees in the sum of $12,000 and costs contained in the judgment of December 23, 1992 are hereby affirmed.
This court further awards Sherril an additional $6,000 as sanctions against Ralph Zatzkis and his attorneys in the form of attorney's fees in connection with the appeal of the judgment of November 9, 1992 and $4,000 for additional attorney's fees against Ralph Zatzkis in connection with the appeal of the judgment of December 23, 1992, plus all costs of this appeal.
AFFIRMED AS AMENDED
NOTES
[1] We note that in a recent letter to this court dated September 17, 1993 Zatzkis refers several times to Sherril's discovery requests as "pleadings."