713 So.2d 568 (1998)
Larry AISOLA, et al.
v.
METROPOLITAN LIFE INSURANCE COMPANY, et al.
No. 97-CA-2145.
Court of Appeal of Louisiana, Fourth Circuit.
April 22, 1998.
*569 J. Burton LeBlanc, IV, Cameron R. Waddell, Mickey P. Landry, Sandra A. Jelks, Frank J. Swarr, L. Dawn Smith, LeBlanc, Maples & Waddell, New Orleans, for Appellants.
Before SCHOTT, C.J., and BYRNES and MURRAY, JJ.
BYRNES, Judge.
Appellants, counsel for plaintiffs, are appealing[1] a judgment ordering them to pay sanctions of $1,000 for bringing a protective order seeking to prevent their clients from being examined by two doctors, Drs. Brooks Emory and Robert Jones, who were chosen by the defendants. The plaintiffs did not contest the right of the defendants to choose doctors to examine the plaintiffs. The objection to these two doctors was based on allegations of known bias by these doctors against all plaintiffs.
In the trial Court at a hearing held on April 30, 1997, the plaintiffs argued that the doctors "showed a long history of prejudice and bias by their action." The trial judge responded:
You cited one case. You cited one case [White v. State Farm Mut. Auto. Ins. Co., 95-551 (La.App. 3 Cir. 7/17/96); 680 So.2d 1] and opposing counsel cited a number of instances where the same good Doctor Jones testified on behalf of the plaintiff.
The trial judge pointed out that in White there were numerous reported cases finding that the doctor in question had demonstrated bias. The White court noted that, "It must be presumed that doctors will conduct their physical examinations properly." However, the White court went on to note that, "that presumption can be overcome by a physician's documented, long history of partiality." Counsel for plaintiffs then referred to a letter from Dr. Emory addressed to a Dr. Merchant which she characterized as expressing an opinion that "a jury was not capable of deciding these issues and neither were the Courts nor the attorneys." The trial judge explained that this was not an expression of bias against plaintiffs, but an expression of Dr. Emory's opinion that the asbestos cases were too complex for lay people. Dr. Emory's letter was not written in regard to the case before the court. There is much in the letter expressing concern for those suffering from asbestos related problems. Dr. Emory's letter expressed a desire to see that those who genuinely sustained such injuries be properly compensated, but he did not believe that the legal system in America was designed to properly determine who those people were and to what extent they were injured. Dr. Emory's letter expressed a preference for "a panel of impartial experts such as is done in Canada." Dr. Emory's letter does indicate that he feels that plaintiffs' attorneys may place their own interests above that of their clients, but that does not indicate any bias against the client.
*570 The trial judge then referred to the fact that plaintiffs' counsel had already had a similar request for a protective order rejected by another section of the Civil District Court, implying that that disposition should demonstrate to plaintiffs' counsel that their request for the protective order was without merit. Plaintiffs' counsel responded by drawing an analogy to civil rights cases that may have been initially rejected but which were eventually successfully pursued by persistent attorneys who were not easily discouraged from advocating for their clients. We also note that the above referred to Civil District Court decision is not reported and is not precedent.
Everything in the record up to this point was treated by the trial judge as preliminary to the bringing of the motion for the protective order. At this time the trial judge informed plaintiffs' counsel that he would allow the motion to be argued because:
If I were to rule in favor for you, there's not a doctor that comes to testify in this courtroomeverybody understands and knows that ordinarily you have what they call, "plaintiff's doctors" and "defense's doctors." That's what you have. We all know what their names are.
Now, because their doctors generally testify on behalf of plaintiffs or generally testify on behalf of defense, this Court can not make the inference because of that they are bias[ed] against either side....
The trial court then informed plaintiffs' counsel that the record was protected by the filing of the motion for protective order, but that if plaintiffs' counsel still insisted on arguing the motion it would be done at the risk of $1,000 in sanctions.
Counsel for plaintiffs decided to proceed with the argument of the motion for a protective order in spite of the aforementioned admonition by the trial judge. Plaintiffs' counsel then made the following oral arguments:
1. "In White, the Court disallowed the doctor from taking IME's of the plaintiff because of the long history of bias and prejudice.
2. The letter from Doctor Emory to Doctor Merchant showed a "disdain" for the legal profession which meets one of the White criteria.
3. This letter is "just one in a series of incidents that create a history of bias on the part of Doctor Emory."
Plaintiffs' counsel wanted to argue a number of different factors which "taken as a whole demonstrates a history of prejudice and bias," but offered to present only one instance of each factor, such as the disdain for the legal profession already referred to above. The trial judge cut plaintiffs' counsel off, preventing her from presenting argument on each factor, taking the position that a history of each factor must be demonstrated, not a collection of isolated instances of different factors:
Well, you've proven my point, counsel. I don't care, if you can get a point in each one of the three points that the White's decision dealt with, but in each one of those points, they talked about a long line of history in each one, not an incident in each one. Is that a difficult concept? ... [Emphasis added.]
In her written memorandum in support of the motion for protective order, plaintiffs' counsel noted that in another Civil District Court proceeding Dr. Emory testified that the plaintiff did not have any occupational lung disease, but other doctors gave testimony that would seem to contradict Dr. Emory's opinion. We note that there was no finding of bias on the part of Dr. Emory in that case. Plaintiffs' counsel knew or should have known that in the absence of a finding of bias, the mere fact that Dr. Emory's opinion in one isolated case may have been arguably inconsistent with the opinion of certain other physicians, does not establish a history of bias, nor does it tend to establish a history of bias. If medical opinion were uniform, there would be little basis for litigation. No reasonable attorney could believe that this allegation and proof could be persuasive.
Plaintiffs' memorandum also contended that Dr. Emory was known to show disdain for plaintiffs by walking briskly with them through the Ochsner medical facility as an "underhanded method of challenging the veracity *571 of plaintiff's shortness of breath complaints..." None of these plaintiffs was identified and no evidence was offered in support of this allegation. No reasonable attorney could believe that a court could give any weight to such vague and unsubstantiated allegations.
The letter from Dr. Emory to Dr. Merchant is the only thing of substance asserted by plaintiffs' counsel in her effort to have Dr. Emory disqualified on the basis of bias. Therefore, where Dr. Emory is concerned the question becomes, "Is the attempt to have Dr. Emory disqualified on the basis of this letter alone frivolous?"
Plaintiffs' counsel's memorandum in support of the motion for protective order attacked Dr. Jones based on a recent Office of Worker's Compensation decision[2] in which he was found to have an appearance of bias. But our reading of that decision does not indicate that Dr. Jones' bias was based on a prejudice against plaintiffs generally as is alleged in the instant suit. Rather it was based on a finding that Dr. Jones had a "long standing relationship with the defendant, Johns-Manville." A bias in favor of one particular defendant is not a bias against all plaintiffs.
Plaintiffs' counsel's memorandum also argued that in another case Dr. Jones' opinion that the plaintiff in that case did not have asbestosis was in conflict with the opinion of a number of other physicians. In that case the Office of Workers' Compensation[3] found that:
The medical evidence and testimony herein overwhelmingly confirms by clear and convincing evidence that the claimant contracted asbestosis during the course and scope of his employment. This is proven by clear and convincing evidence. Dr. Jones was the only doctor who gave an opinion that the claimant did not have asbestosis. In Dr. Jones' report of June 6, 1996, he exhibited an insensitive attitude toward claimant's further exposure to asbestos or carcinogenic elements. It is evident that he was more concerned with the inconvenience to the employer.... [Emphasis added.]
That case is somewhat more persuasive because there was no finding that Dr. Jones was biased in favor of the defendant, Mobil Oil Corporation. Therefore, an anti-plaintiff bias is one of a number of permissible inferences that could be drawn from the findings of that case.
Thus, regarding Dr. Jones we have one instance of a case in which Dr. Jones was found to have a bias which can be distinguished on the basis that it was really more in favor of the particular defendant than against plaintiffs in general, and a second instance of bias which would permit the reasonable inference of anti-plaintiff bias. In White the court referred to many more clear cut findings in reported cases. Neither of the cases cited by the plaintiffs against Dr. Jones are reported cases. Although they may have no weight as legal precedence, they are evidence in support of plaintiffs' factual argument of bias.
Clearly plaintiffs' proof of bias in the instant case falls far short of the persuasive power of the evidence found in the White case. However, this does not necessarily mean that plaintiffs' counsel was frivolous in bringing her motion. White does not create a bright line. Nor is White binding on this circuit. Plaintiffs' counsel's position was not without foundation. She offered genuine, albeit insufficiently persuasive evidence in support of her argument. She may have asked the trial court to go farther than any court had gone before, but in the absence of a bright line we cannot say that she was frivolous in testing the limits of the law, or in the language of LSA-C.C.P. art. 863(B), plaintiffs' counsel's argument was grounded in fact and represented "a good faith argument for the extension ... of existing law." Nor do we believe that the motion was interposed by plaintiff's counsel for the purpose of delaying her own case. Delay is not generally to the advantage of the plaintiff in cases such as the one before us. The trial court is not empowered to impose sanctions merely because *572 an argument is found to be unjustified; failure to prevail does not trigger an award of sanctions. Witter v. Witter, 94 0378 (La. App. 1 Cir. 12/22/94); 648 So.2d 1052, 1053. LSA-C.C.P. art. 863 sanctions are to be imposed only in exceptional circumstances. Id. This Court has held that where even the slightest justification for the assertion of a legal right exists, sanctions are not justified; only when the evidence is clear that no justification exists, should sanctions be considered. Loyola v. A Touch of Class Transp. Service, Inc., 580 So.2d 506, 513 (La.App. 4 Cir.1991); Witter, supra.
As the trial judge pointed out, it is a well known fact that certain doctors generally testify for plaintiffs and certain others generally testify for defendants. If the sum total of the plaintiffs' complaint against the two doctors in the instant case had been that these two doctors generally testified for defendants, it would be easier to characterize the motion as frivolous. However, we note that plaintiffs' counsel did not merely argue that the two doctors in question generally testified on behalf of defendants. Plaintiffs' counsel offered documentary evidence, insufficiently persuasive perhaps, but nonetheless real, which would permit the inference of bias against plaintiffs generally. Although we are reluctant to interfere with the trial judge's conduct of a trial, following Loyola v. A Touch of Class, supra, we cannot say that plaintiffs' counsel had no justification for bringing the motion for protective order. Plaintiffs' counsel did not exceed the bounds of reasonable advocacy.
For the foregoing reasons the judgment of the trial court is reversed.
REVERSED.
NOTES
[1] The plaintiffs initially applied for writs to this Court in 97-C-1059. By order dated July 3, 1997, this Court converted that writ application to an appeal citing Pittman Const. Co., Inc. v. Pittman, 96-1079 (La.App. 4 Cir. 3/12/97); 691 So.2d 268, writ denied 97-0960 (La.5/16/97); 693 So.2d 803, and Armstrong v. Stein, 95-0097 (La.3/18/94); 634 So.2d 845.
[2] Joyce B. Albarado v. Johns-Manville, 94-08806 (OWC 1/24/97).
[3] Carl A. Rareshide v. Mobil Oil Corporation, 95-07386 (OWC 4/18/97).