| | | |
|---|---|---|
| **BRENDON BANKS, SR.** | * | NO. 2022-CA-0151 |
| **HUSBAND OF/AND CHALAI'** | | |
| **BANKS** | * | |
| | | COURT OF APPEAL |
| **VERSUS** | * | |
| | | FOURTH CIRCUIT |
| **PROGRESSIVE PALOVERDE** | * | |
| **INSURANCE COMPANY AND** | | STATE OF LOUISIANA |
| **RLH INVESTMENTS, LLC** | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2013-08604, DIVISION "C"
Honorable Sidney H. Cates, Judge
* * * * * *
**Judge Roland L. Belsome**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge
Paula A. Brown)

RODERICK RICO ALVENDIA
ALVENDIA KELLY & DEMAREST, L.L.C.
909 Poydras Street, Suite 1625
New Orleans, LA 70112-4500

    COUNSEL FOR PLAINTIFF/APPELLEE

FRED L. HERMAN
JACOB D. YOUNG
CHEHARDY SHERMAN WILLIAMS RECILE & HAYES APLC
One Galleria Blvd, Suite 1100
Metairie, LA 70001

    COUNSEL FOR DEFENDANT/APPELLEE

DAVID A. STRAUSS
MARCO J. SALGADO
STRAUSS MASSEY DINNEEN, LLC
935 Gravier Street
Suite 1450
New Orleans, LA 70112

MARTIN A. STERN
JEFFREY EDWARD RICHARDSON
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500

New Orleans, LA 70139

COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED IN PART,**
**-REVERSED IN PART,**
**-AND REMANDED**
**SEPTEMBER 30, 2022**

Defendant, Progressive Paloverde Insurance Company ("Progressive"), seeks review of the trial court's judgment granting a joint motion for sanctions filed by Defendant/Third Party Plaintiff RLH Investments, LLC ("RLH") and Plaintiff Brendon Banks, Sr. ("Banks").[1] For the reasons that follow, this Court affirms in part, reverses in part, and remands.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from a single-vehicle accident, and the subsequent litigation practices employed by the parties.

**The Accident**

On July 16, 2013, Banks, within the scope and course of his employment with RLH, was driving a cement-truck in Orleans Parish. Banks lost control of the vehicle near the I-510 and I-10 ramps, causing the truck to plummet over the edge of the ramp, falling approximately 42 feet. Banks sustained severe injuries as a result of the accident.

**Banks v. RLH: Spoliation and Intentional Tort**

---

[1] Banks' wife, Chalai' Banks, is also a plaintiff.

1

On September 10, 2013, Banks filed a *Petition for Spoliation and Intentional Tort Damages* against RLH and Progressive (as RLH's insurer). Regarding his intentional tort claim, in his petition Banks alleged that he had warned RLH "almost daily" that one of the tires on his truck was leaking air and was "certain to blow," and that rather than fixing the truck, RLH mocked him for his complaints and informed him that the tire would not be replaced until it "blew out." Importantly to this review, Banks also alleged in his petition that RLH was liable due to its intentional spoliation of evidence; Banks alleged that RLH disposed of the truck involved in the accident prior to an opportunity for Banks to inspect it, despite having received a request from Banks' attorney to preserve it. It is not disputed that RLH received Banks' request ("the Preservation Letter"), nor that RLH disposed of the truck with actual knowledge as to the request to preserve it.

Although joined as a co-defendant by Banks in his spoliation and intentional tort action (as an insurer of RLH), Progressive filed a motion for summary judgment seeking dismissal from the case. In its motion, Progressive argued that its policy excludes coverage for intentional acts of the insured or injuries to employees, and that for any covered negligence claim the plaintiff's sole remedy would be workers compensation. Shortly before the hearing on Progressive's motion, Banks voluntarily dismissed Progressive without prejudice.

On March 13, 2018, the trial court granted Banks' motion for spoliation, striking RLH's defenses and granting partial summary judgment against RLH, on the issue of liability. That judgment was not appealed.

**RLH (and Banks) v. Progressive: Detrimental Reliance**

After it was judged liable due to spoliation of the evidence, RLH joined Progressive as a co-defendant via a third-party demand on November 20, 2018. Specifically, RLH alleged that prior to disposing of the truck, RLH's risk manager David Johnson spoke with a Progressive employee about the truck and the Preservation Letter, and that "[t]he Progressive adjuster advised RLH that that there was no problem with RLH disposing the truck." The legal theories pled by RLH to hold Progressive liable included breach of fiduciary duties, bad faith breach of contract, and, most relevant to this review, detrimental reliance.

On June 23, 2020, RLH propounded discovery on Progressive. Included was "REQUEST FOR ADMISSION NO.1," in which RLH asked Progressive to "[a]dmit or deny that You [sic] received the correspondence attached hereto as Exhibit A [the Preservation Letter] prior to September 9, 2013."[2] Progressive denied the request, despite the fact that the attached Exhibit A indicated that Progressive was carbon copied ("cc-ed") on the Preservation Letter when it was sent to RLH by Banks' attorney.

Based on this response and newly discovered evidence of Progressive's receipt of the Preservation Letter, RLH filed a *Motion for Sanctions and to Strike*

---

[2] "You" was defined in the Requests for Admission as including Progressive's agents and employees.

*Defenses* against Progressive on October 12, 2021. In its motion, RLH argued that Progressive's denial to the request for admission violated Louisiana Code of Civil Procedure Article 863, which requires a party's or attorney's pleadings and papers to reflect the best of their knowledge, information, or belief, after first having made a reasonable inquiry. As evidence, RLH attached a copy of an email sent by RLH's insurance broker (Donnaway Insurance, Inc.) to Stephen Dollar (an adjuster for Progressive at the time, who was working on the case), in which RLH (through Donnaway) forwarded to Dollar the Preservation Letter sent to RLH by Banks' attorney. The email was dated August 13, 2013.

At the hearing on the motion, RLH argued that Progressive was at fault in failing to retain the Preservation Letter, and that such failure cost RLH the ability to fully defend against Banks' intentional tort and spoliation action. In response, Progressive argued that no evidence was spoliated as a result of Progressive's failure to retain the Preservation Letter (as it is undisputed that RLH was always in possession of the letter, including its indication that Progressive was 'cc-ed'), and that sanctions which strike defenses are only appropriate where the non-movant's conduct was intentional, or constituted a violation of a court order. Progressive also argued that at the time it received the Preservation Letter, it had yet to receive notice of Banks' intentional tort and spoliation action, and that when it received such notice – as well as when its agent spoke to Mr. Johnson – that Progressive checked its files and was unable to locate the Preservation Letter. In briefs to this Court, Progressive argues that the most likely explanation is that the Preservation

Letter was misfiled by Dollar, and subsequently lost when Dollar's emails were deleted following his departure from Progressive.

After hearing argument, the trial court granted the motion for sanctions.[3] However, rather than striking Progressive's defenses, as requested by Banks and RLH, the trial court in its discretion elected to impose less severe nonmonetary sanctions. The trial court ordered that Progressive "be precluded from producing any evidence which suggests it did not receive the evidence preservation letter dated August 12, 2013." Further, the court ordered that Progressive be precluded from presenting evidence "that it did not provide any assurances or advice(s) [to RLH] relevant to the Preservation Letter." This suspensive appeal followed.[4]

## ASSIGNMENTS OF ERROR AND STANDARD OF REVIEW

Appellants have assigned four errors in the trial court's judgment granting sanctions: (1) that there was "reasonable justification" for Progressive's denial; (2) that there was no evidence of "willful misconduct" on the part of Progressive; (3) that RLH was not prejudiced; and (4) that the specific sanctions imposed were excessive.

While recognizing that trial courts have a great deal of discretion in sanction matters, this Court applies the "abuse of discretion" standard as to the type and severity of sanctions imposed. *Elysian, Inc. v. Neal Auction Co., Inc.*, 2020-0674,

---

[3] The judgment was rendered by Judge Sidney H. Cates in Civil District Court, Division C-10, case number 2013-8604. No written reasons were given, but the trial court's oral judgment can be found in the hearing transcript.

[4] Parties may take immediate appeal of a court's judgment awarding sanctions against it, even in the absence of a final judgment as to all of the claims. La. C.C.P. art. 1915(A)(6).

p. 17 (La. App. 4 Cir. 7/21/21), 325 So. 3d 1075, 1087 (citing *Show & Tell of New Orleans, L.L.C. v. Fellowship Missionary Baptist Church*, 2014-0843, pp. 7-8 (La. App. 4 Cir. 12/17/14), 156 So. 3d 1234, 1239); *Mendonca v. Tidewater, Inc.*, 2011-0318, p. 9 (La. App. 4 Cir. 9/7/11), 73 So. 3d 407, 414 ("[a]ppellate review of a challenge to the type or amount of Article 863 sanctions imposed is under an abuse of discretion standard").

## LAW AND ANALYSIS

The Louisiana Code of Civil Procedure, Article 863,[5] provides, in pertinent part:

> B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:
>
> (1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.
>
> (2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.
>
> (3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> (4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

---

[5] It should be noted that, by its plain language, Article 863 does not apply to discovery responses, but rather only to "pleadings." The parties may have more properly sought relief under La. C.C.P. art. 1420 ("Signing of discovery requests, responses, or objections"). However, this Court has noted that Article 863 also applies to "motions and other papers" signed by an attorney or litigant, *John W. Fisk Co., Div. of Fisk Corp. v. Michel*, 97-2105, p. 3 (La. App. 4 Cir. 3/25/98), 709 So. 2d 1061, 1064, consistent with the federal approach under Fed. R. Civ. P. 11. Additionally, this Court has held that the certifications implied through a signature under Article 1420 and Article 863 are "virtually interchangeable" and, thus, that this kind of mistake is "harmless error." *Zatzkis v. Zatzkis*, 632 So. 2d 302, 306 (La. App. 4th Cir. 1993).

* * * * * * *

> D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.

La. C.C.P. art. 863.

"[Article 863] is penal in nature and should be strictly construed." *Voitier v. Guidry*, 2014-276, p. 14 (La. App. 5 Cir. 12/16/14), 166 So. 3d 262, 271. A court should not award sanctions merely because "a particular argument or ground for relief is subsequently found to be unjustified." *Fairchild v. Fairchild*, 580 So. 2d 513, 517 (La. App. 4th Cir. 1991). Rather, "the trial court should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading was submitted." *Landry v. Landry*, 2021-0337, p. 6 (La. App. 1 Cir. 10/8/21), 331 So. 3d 351, 356, *writ denied*, 2022-00044 (La. 3/2/22), 333 So. 3d 835. However, because Article 863 imposes on litigants an affirmative duty to make an objectively reasonable inquiry before signing a pleading or paper setting forth a claim, allegation or denial, this Court has repeatedly held that "subjective good faith will not satisfy the duty of reasonable inquiry." *Elysian*, 2020-0674, p. 18, 325 So. 3d at 1088 (citing *Loyola v. A Touch of Class Transp. Serv., Inc.*, 580 So. 2d 506, 509-10 (La. App. 4th Cir. 1991)).

**First Assignment of Error**

In its first assignment of error, Progressive argues that sanctions are not warranted because Progressive had a "reasonable justification" in denying RLH's

7

Request for Admission. Progressive points to the fact that prior to making its denial, it checked its claims file for the incident and did not find the Preservation Letter. Progressive argues that such action - checking its claim file - satisfied the duty to make a reasonable inquiry under Article 863, and was a "reasonable justification" for its denial. However, the cases cited by Progressive to support this argument are inapposite. In *Fairchild*, this Court held that "[t]he slightest justification for the exercise of a legal right precludes sanctions." 580 So. 2d at 518. However, the issues present in *Fairchild* were very different from the ones *sub judice*. *Fairchild* involved a divorce and custody action in which one of the parties propounded interrogatories on the other after a judgment had been rendered, allegedly in an attempt to harass and increase litigation costs. This Court held that sanctions were inappropriate in that case because "the children's visitation was contingent upon [the party]'s continued psychiatric therapy",[6] which was the subject of some of the complained-of interrogatories. Thus, *Fairchild* stands for the proposition that sanctions are not warranted where there is an arguable justification for the exercise of a *legal right or litigation device*, such as the filing of a pleading or motion. This is very different from the 'justification' argued by Progressive in this case, which essentially amounts to the idea that Progressive should be excused for its erroneous response, since there was at least some evidence to support it.[7]

---

[6] Unlike most judicial determinations, judgments which award custody and/or visitation can be modified when there has been a material change in circumstances. *E.g. Tracie F. v. Francisco D.*, 2015-1812 (La. 3/15/16), 188 So. 3d 231. This is one of the reasons that a trial court enjoys continuing exclusive jurisdiction over such cases, La R.S. 13:1814(A), which in turn is why the movant's actions in *Fairchild* were justified.

That logic would frustrate Article 863's requirement that parties make an objectively reasonable inquiry prior to responding to discovery requests, as well as the well-established rule that subjective good faith is insufficient. *E.g. Elysian*, 2020-0674, p. 18, 325 So. 3d at 1088. Other cases cited by Progressive are similarly distinguishable. *Green v. Wal-Mart Store No. 1163*, 1996-1124 (La. App. 4 Cir. 10/17/96), 684 So. 2d 966 (holding that motion for summary judgment was not sanctionable); *Aisola v. Metro. Life Ins. Co.*, 1997-2145 (La. App. 4 Cir. 4/22/98), 713 So. 2d 568 (holding that counsel's motion for protective order was not sanctionable).

At the time of its denial, Progressive was aware that it had been 'cc-ed' on the Preservation Letter and that the letter had been sent to Stephen Dollar, one of their former employees.[8] That much was apparent from RLH's Exhibit A, which was attached to the Request for Admission.[9] While checking its claim file was certainly the logical *first* step in responding to RLH's Request for Admission, this Court cannot say that such action, *alone*, constitutes an objectively reasonable inquiry under these circumstances, particularly for a party as sophisticated as

---

[7] Even if *Fairchild*'s holding was applicable to the type of 'justification' argued by Progressive in this case, it could hardly be said that Progressive's loss of the Preservation Letter was reasonable, particularly since Progressive had a fiduciary duty towards RLH, its insured, and may have breached such duty by failing to properly file and retain the Preservation Letter.

[8] Progressive continues to argue on appeal that there is no proof that Progressive (or Stephen Dollar) ever actually received the Preservation Letter. However, given that the email was clearly sent to a Progressive email server, and considering the ubiquitous reliance on email communications in modern times, we find no merit in this assertion. Even Progressive concedes that "the most likely explanation is that…it must have been misfiled."

[9] It is important to note that, as mentioned above, RLH's Request for Admission did not ask whether Progressive was currently in possession of the Preservation Letter, but rather asked whether Progressive (or its employees) had ever *received* the letter.

Progressive. Progressive was aware that the Preservation Letter was an extremely important piece of evidence, both in Banks' original action and in RLH's third-party demand. Having been put on notice that the Preservation Letter was sent to one of their employees, Progressive's next step should have been a more thorough search for their receipt of the Preservation Letter or - if that was impossible due to the deletion of Dollar's emails following his separation from Progressive - a response indicating that Progressive lacked sufficient information to admit or deny RLH's Request for Admission.

**Second Assignment of Error**

Progressive's second assignment of error is that no sanction was warranted because there was no evidence of "willful misconduct." To support their argument, Progressive cites *Horton v. McCary*, 1993-2315 (La. 4/11/94), 635 So. 2d 199, and *BancorpSouth Bank v. Kleinpeter Trace, L.L.C.*, 2013-1396 (La. App. 1 Cir. 10/1/14), 155 So. 3d 614. However, the holdings of *Horton* and *BankcorpSouth* were narrower than Progressive argues.

In *Horton*, the Supreme Court reversed the trial court's sanction, which had granted default judgment against the defendants on the issue of liability. The Court reasoned that "dismissal and default are draconian penalties which should be applied only in extreme circumstances ... those sanctions are generally reserved for the most culpable conduct." *Horton*, 1993-2315, 635 So. 2d at 203. The Court held that "[s]ince there [was] no evidence that the clients here participated in violating the trial court's discovery orders, the trial court erred in granting a default judgment

on liability." *Id.* The Court noted that, on remand, the trial court might find that the "defendants were individually responsible for the incomplete and incorrect responses" and, in that context, held that "[c]riteria to be considered in imposing any sanctions are the prejudice to plaintiffs and the willfulness of defendants." *Id.,* 635 So. 2d at 204.

*BancorpSouth* also involved a sanction which took the 'draconian' form of a dismissal, which the First Circuit Court of Appeals reversed after finding that the party's conduct was not "willful[] or in bad faith." *BancorpSouth*, 2013-1396, p. 32, 155 So. 3d at 636. Federal courts have also held that default/dismissal sanctions require willful or intentional misconduct. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S. Ct. 2778, 2779 (1976); *U.S. For Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Unlike the cases cited by Progressive, the trial court's judgment in this case imposed evidentiary sanctions on Progressive, precluding it from introducing certain evidence at trial, rather than a sanction imposing liability on Progressive by default. Therefore, this Court finds the cases cited by Progressive to be distinguishable, insofar as they apply only to sanctions which award default or dismissal as a remedy. Their limited applicability to this case will be discussed further below.

**Third Assignment of Error**

Progressive's third assignment of error is that no sanction was warranted because RLH/Banks were not prejudiced. Progressive once again cites language

from *Horton* ("[c]riteria to be considered in imposing any sanctions are the prejudice to plaintiffs and the willfulness of defendants", *Horton*, 1993-2315, 635 So. 2d at 204) to support this argument. However, as previously discussed, *Horton* involved a sanction granting dismissal. *Id.* at 203. Regarding less severe sanctions, in *Thomas v. Waste Mgmt. of Louisiana, LLC*, this Court held that a district court "considers the prejudice to the other party." 2020-0475, p. 11 (La. App. 4 Cir. 2/24/21), 314 So. 3d 875, 883. However, this Court noted in *Thomas* that

> The Louisiana Supreme Court has delineated the 'basic objectives' of the Louisiana discovery process as follows: (1) to afford all parties a fair opportunity to obtain facts pertinent to litigation; (2) to discover the true facts and compel disclosure of these facts wherever they may be found; (3) to assist litigants in preparing their cases for trial; (4) to narrow and clarify the basic issues between the parties, and; (5) to facilitate and expedite the legal process by encouraging settlement or abandonment of less than meritorious claims.

*Id.* at pp. 11-12, 314 So. 3d at 883. This Court concluded in *Thomas* that the moving party had been prejudiced because he was not "afforded a fair opportunity to obtain facts pertinent to the litigation," was "hindered in preparing his case for trial and delayed in potentially settling his claims." *Id.* at p.12, 314 So. 3d at 883. Thus, the required showing of prejudice is fairly minimal. This comports with the purpose of Article 863, which in large part is aimed at the deterrence of improper litigation practices. *Keaty v. Raspanti*, 2003-1080, p. 8 (La. App. 4 Cir. 2/4/04), 866 So. 2d 1045, 1051 ("we recognize that the purpose of article 863 is to deter frivolous litigation"). Moreover, in *Thomas* the non-movant's failure "prevented [the movant] from … possibly settling this matter." 2020-0475, p. 11, 314 So. 3d at 883. This Court finds those circumstances to be similar to the ones suffered by

RLH and Banks here. Had Progressive admitted to its receipt of the Preservation Letter, the bargaining positions in possible settlement discussions would have been very different. And in any case it is clear that RLH was "hindered in preparing [its] case for trial", *Thomas*, 2020-0475, p.12, 314 So. 3d at 883, as RLH had to seek out proof of Progressive's receipt of the Preservation Letter, an investigative step with accompanying costs that it would not have been necessary but for Progressive's erroneous denial. And at the very minimum, RLH was prevented from "discover[ing] the true facts and compel[ling] disclosure of these facts," which the Supreme Court has expressly delineated as one of the goals of the discovery process. *Id.*

**Fourth Assignment of Error**

Progressive's fourth assignment of error is that the trial court erred in awarding severe sanctions when lesser sanctions were available. This Court has held that, while not dispositive, one factor to consider in reviewing sanctions is "[w]as the sanction the least severe sanction adequate to achieve the purpose of the rule under which it was imposed?" *Keaty*, 2003-1080, p. 5, 866 So. 2d at 1050.

As previously discussed, after finding that Progressive violated Article 863 the trial court awarded two remedies: (1) that Progressive be precluded from introducing evidence that it had not received the Preservation Letter, and (2) that Progressive be precluded from introducing evidence that it did not provide "assurances or advice(s) relevant to the Preservation Letter." While Progressive argues that any award of sanctions was in error, it particularly focused its

13

argument, both in briefing and in oral argument, to the latter of these two awards. Specifically, Progressive argues that precluding it from presenting evidence regarding promises made to RLH by Progressive regarding the legality of destroying the truck essentially "constitutes the striking of one of Progressive's defenses at trial." This Court agrees.

At the hearing on RLH/Banks' motion for sanctions, the trial court declined to strike Progressive's defenses, described in the hearing as "the death penalty" and described by other Louisiana courts as "a draconian penalty." *Horton*, 93-2315, 635 So. 2d at 203. However, under Louisiana's formulation of the theory of detrimental reliance, whether a promise was made is of fundamental importance, and constitutes the bulk of a plaintiff's burden of proof.[10] Even under circumstances where a default sanction is warranted, Louisiana courts have nevertheless required plaintiffs to prove a *prima facie* case against the defendant/non-movant. *Horton*, 93-2315, 635 So. 2d at 203 (citing *Clark v. Clark*, 358 So. 2d 658, 659 (La. App. 1st Cir. 1978) ("our law requires that proof of a prima facie case be made before a judgment by default can be rendered and signed by a judge")). In the context of a detrimental reliance claim, that would clearly require proof of a promise made.

## CONCLUSION

---

[10] Louisiana's formulation of detrimental reliance provides that "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable." La. C.C. art. 1967.

This Court holds that the trial court's latter remedy, precluding Progressive from introducing evidence contesting that it made a promise to RLH regarding the legality of disposing of the truck, essentially constitutes the striking of a defense, and is analogous to the dismissal and/or default sanctions at issue in *Horton* and *BancorpSouth*, as discussed above. Thus, while those cases are not controlling as applied to the trial court's first remedy (precluding Progressive from introducing evidence that it did not receive the Preservation Letter), they are persuasive as to the second. For that reason, this Court reverses that portion of the judgment which precludes Progressive from introducing evidence related to "assurances or advice(s)" made to RLH regarding the Preservation Letter, and affirms the portion which precludes Progressive from introducing evidence that it actually received the letter. Accordingly, this case is remanded for further proceedings consistent with this opinion,[11] and for trial on the merits.

**AFFIRMED IN PART,**
**-REVERSED IN PART,**
**-AND REMANDED**

---

[11] On remand, the trial court - at its discretion and if finding them warranted - may also choose to impose the less severe remedy of monetary sanctions on Progressive, amounting to RLH's reasonable costs and attorney's fees for obtaining evidence showing that Progressive did in fact receive the Preservation Letter.